Atkinson, J.,
delivered the opinion of the court:
During the months of December, 1853, and January, 1854, the corporation of Georgetown issued to Samuel I. Little four certificates of 6 per cent stock aggregating $4,012, the interest on said stock being payable quarterly. Tn 1855 Samuel I. Little executed a will in which he bequeathed these certificates of stock to his sister, Eliza A. Little, “ to be used by her during her natural life and at her death to revert'to-my nearest surviving relative.” Said Samuel I. Little left surviving him two children, a son, John O. Little, who died unmarried in 1874, and a daughter, Julia A. L. Burnell, the claimant herein. Said sister, Eliza A. Little, in November, 1891, married one Robert Ricketts. At her death the claim *543 ant was the sole surviving descendant of said Samuel I. Little.
In 1871 provision was made by the first legislative assembly of the District of Columbia for tlie payment of the indebtedness of the cities of Washington and Georgetown by an act passed August 19, 1871 (Acts of the First Legislative Assembly, chap. 52). Section 1 of this act created the offices of commissioners of the sinking fund and section 2 provided for. the payment by said commissioners from certain revenues óf the District of Columbia, of the stocks, bonds, and certificates of indebtedness of the cities of Washington and Georgetown and of the District of Columbia.
By an act dated June 11, 1878 (20 Stat. L., 102), Congress provided a permanent form of government for the District of Columbia, abolished the sinking-fund commissioners, and transferred their duties to the Treasurer of the United' States. By an act of June 10, 1879 (21 Stat. L., 9), Congress authorized the Commissioners of the District of Co-luinbia to execute and deposit with the Secretary of the Treasury bonds of ,the District of Columbia to an amount not to exceed $1,200,000, the proceeds to be used only for the funded indebtedness of said District or of the late municipal corporations of Washington and Georgetown, which became due January 1 and March 1, 1879, of those now existing or payable at pleasure for the redemption of which the sinking fund of the District may not provide. This act also provides that said bonds shall be sold by the Secretary of the Treasury to the highest bidder and that the money realized from such sale be paid out by the Secretary of the Treasury only for the purposes named in this act. On the 3d of July, 1879, the Treasurer of the United States gave notice that the stocks known as the registered stocks of the late corporations of Washington and Georgetown would be paid at the Treasury of the United States on and after July 15,1879, and that interest on said stocks would cease on that date.
The four certificates of stock issued to Samuel Í. Little were presented to the Treasurer, and their aggregate amount of $4,012 was paid to the order of Eliza A. Little Ricketts, together with the sum of $9.23, which was the accrued unpaid interest thereon. In November, 1891, said Eliza A. *544 Little Ricketts, the legatee of the said stock, died, and on September 20, 1894, the plaintiff, as remainderman under the will of Samuel I. Little, demanded payment for the stock, which was refused. Thereafter, on April 29, 1896, this action was begun by the filing of the petition herein.
Was the payment made by the Treasurer of the United States to Eliza A. Little Ricketts, the legatee of her brother, Samuel I. Little, of the stock or bonds held by him and known as bonds issued by Georgetown City, D. C., aggregating the sum of $4,012, a valid discharge of the liability of the United States to the plaintiff, the remainderman? The answer to the question necessarily involves the construction of the will under which said bonds were devised to the said Eliza A. Little. It is in the following language:
“ WASHINGTON COUNTY,
“ June 26,1855.
“ I hereby give and bequeath to my dearly beloved sister, Eliza A. Little, of Washington County, D. C., all the stocks standing in my name on the books of the corporation of Georgetown, D. C.,to be used by her during her natural life, and at her death to revert to my nearest surviving relative.
“ S. I. Little.
“ Witnesses:
“ G. M. Dove.
“Abel G. Davis.”
The findings show, and it is not disputed, that this will was duly probated in the Orphans’ Court of the county of Washington, D. C.; that John O. Little, a son of the testator, was on the 7th day of July, 1855, appointed by said court administrator cum testamento annexo of the said Samuel I. Little, deceased; that said administrator died intestate on August 31, 1876, and since his death there has been no other administrator of said estate appointed.
The findings further show that said administrator never parted with the title to said certificates or bonds, nor assigned the same to any person, and that the same remained at all times a part of the estate of Samuel I. Little, subject to the terms of his said will, until November 24,1891, when said Eliza A. Little died, and ívhen the plaintiff herein, being the nearest of kin to said Samuel I. Little, deceased, asserted her claim as remainderman, to bo entitled to recover from the United *545 States the said certificates or bonds, or the value thereof, which amount had been illegally paid, as she avers, to the said Eliza A. Little in her lifetime by the Treasurer of the United States contrary to the' provisions of said will.
It is not questioned, as the findings show, that the certificates or bonds were the property of the testator, Samuel I. Little; that the inventory of said Little’s estate filed in the Orphans’ Court showed him1 to be the owner of said certificates or bonds; that by tile last account of said Little’s administrator they were shown as an asset still on hand and undisposed of under the provisions of the will; that the certificates or bonds bear no indorsement or transfer by the testator or his administrator or other person legally representing him or his estate; that the only assignment was that of Eliza A. Little Iticketts as legatee under the will of her deceased brother, Samuel I. Little; hence it is claimed by plaintiff that the stock certificates never having been assigned or transferred by the administrator (who died in 1876), and no one having been appointed in his stead, could only have been transferred by the joint act of the legatee for a life estate and the remainderman, who is the plaintiff in this cause.
The defendants insist that the testator'did not intend to limit his sister to the use only of the income of the stock certificates, they being redeemable at the pleasure of the Georgetown corporation, and if he had thus intended, he would have so provided in the will. They also further contend that this construction was placed upon the will by the orphans’ court when it directed the distribution of the property of the estate and in which distribution Eliza A. Little received the four shares of stock herein in controversy, and accordingly the case should be considered res adjudicata. A lengthy and able argument is, presented, with many cases cited, to sustain these contentions.
The fundamental and controlling rules for the construction of wills are: (1) Technical import of words is not to prevail over the obvious inttent of the testator; (2) when technical words are used by the testator they are to have their technical import, unless it is apparent that they were not intended to be used in that sense — the particular intent-will always be sacrificed to the general intent; (3) the in *546 tent of the testator is to be determined from the whole will — the entire scheme of the will; (4) every word shall-have effect if it can be given without defeating the general purpose of the will, which is to be carried into effect in every reasonable mode.
In Smith v. Bell (6 Pet., 68) the testator gave all of his personal estate, after certain payments, to his wife “ to and for her own use and benefit and disposal absolutely,” with a provision that the remainder after her decease should go to his son. The court held that the latter clause qualified the former and showed that the wife only took a life estate. In construing the language of the devise Chief Justice Marshall, after observing that the operation of the words “ to and for her own use and benefit and disposal absolutely ” annexed to the bequest, standing alone, could not be questioned, said: “ But suppose the testator had added the words ‘ during her life.’ These words would have restrained those which preceded them, and have limited the use and benefit, and the absolute disposal given by the prior words, to the use and benefit and to a disposal for the life of the wife. (13 Ves., 444.) The words, then, are susceptible of such limitation. It may be imposed on them by other words. Even the words ‘ disposal absolutely ’ may have their absolute character qualified by restraining words connected with and explaining them to mean such absolute disposal as a tenant for life may make.”
The. Chief Justice then proceeded to -show that other equivalent words might be used equally manifesting the intent of the testator to restrain the estate of the wife to her life, and that the words devising the remainder to the son were thus equivalent.
The will in the case at bar in plain terms says, “ I hereby give and bequeath to my sister * * * to be used by her during her natural life ” certain certificates or bonds. Taken alone, this clause would imply that the testator did not intend to limit the legatee simply to the use of the income of said stock; but when it is read in connection with the clause which immediately follows, to wit, “ and at her death to revert to my nearest surviving relative,” it as clearly expresses the testator’s intention that upon the death of the *547 legatee his nearest surviving relative should have the stock. Therefore, to sustain the. contention of the defendants the latter clause would have to be entirely stricken from the will, which the court is not authorized or empowered to do.
The case of Thorpe v. Shillington (15 Grant’s Chancery Reports, 85) involved the construction of a will in which the testator gave all his personal estate and all his other-property, after certain.payments, to his wife “to have and to hold the same for her sole use and benefit during the term of her -natural life.” The court held that “ where money, mortgages, and promissory notes were bequeathed to a legatee for life she would not be entitled to the possession and disposition of the same, but to the income only.” The coui't further said: “A bequest of government stock for life would clearly not entitle a legatee for life to a transfer of the stock into her own name; and a bequest' of mortgages, notes, and money must .be in a like position. A legatee for life is entitled to the possession of things bequeathed specifically where there is no other way of her having the use of them; but the use of public stock, mortgages, notes, money, and the like for life consists in having the income which they produce.”
In the case of Payne v. Robinson (26 App. Cases, D. C., 283), the coiirt, through Chief Justice Shepard, said: “Where there is a bequest of money to a tenant for life, with remainder over, the principal should not be paid to the tenant for life unless the- language of the will shows with reasonable certainty that the testator intended it should be delivered into his possession. It is the duty of the executor to invest the money and pay the interest only to the life tenant, preserving the principal for the remainder-man.” This doctrine is also clearly set forth by Chancellor Kent in his Commentaries,' volume 2, page 354.
In Steiff et al. v. Seibert et al. (128 Iowa, 746), in which Seibert devised and bequeathed to his wife all of his estate, both real and personal, to be hers during her lifetime and to be disposed of by her as she might deem fit and to execute conveyances thereof with remainder to several other parties in the will mentioned in case his said wife had not disposed of the property at the time of her death, the court *548 held that “ a life estate will not be enlarged into a fee by an additional power of disposal, however brought, where the will contemplates a remainder and provides for its distribution, but such portion of the estate as shall be undisposed of at the termination of the life estate will invest in the remainder-men. The will in the instant case is construed and held to create only a life estate with power of disposal.”
It is well settled that where Congress directs a fund to be placed in the United States Treasury for the payment of specific obligations the relation of the Government to the beneficiaries of the fund is not merely that of debtor and creditor, but the Government becomes, as to such fund of such beneficiaries, a trustee. (United States v. Taylor, 104 U. S. R., 216; United States v. Cooper, 120 U. S. R., 124; and United States v. Wardwell, 172 U. S. R., 48.) Hence the general rule that a trustee is bound, at his peril, to see to the proper application of the trust fund applies to the Government as .well as to an individual trustee. (Borcherlin’s ease, 35 C. Cls. R., 312, which was affirmed by the Sujireme Court, 185 U. S. R., 223.) It must therefore be apparent that if the Treasury Department in the case at bar made payment out of a fund which it held in trust, through a mistake of law, to the' party in law not entitled to receive the same, it transcended its authority and is responsible therefor to the rightful owner of the funds.
■ We do not agree with the defendants’ claim that the action taken by the Orphans’ Court of the District of Columbia rendered the case res adjudicaba. The approval and passing of an account of an executor or an administrator is not an adjudication of parties under a will, nor could the delivery of the stock to the legatee by the administrator change the terms and conditions qf the will.
In Reynolds v. Stockton (140 U. S. R., 254) it was decided that a- judgment is not res adjudicaba, even between the parties, unless the matter adjudged was upon an issue within the pleadings. And in Thormann v. Frame (176 U. S. R., 350) it was likewise held that an adjudication by a probate court is not conclusive on a question of domicile, because that question was not in issue in the case.
*549 The findings herein do not show that any proceedings were ever instituted to have the will judicially construed. There was only the ex parte proceeding by the administrator as to the settlement of his accounts, and the court passed no ¡order and rendered no decree as to the legal rights of any legatee. The order made by the court is as follows:
“Also the 8th and final account of John Little, as administrator, w. a., of Samuel J. Little, deceased, and the same were all respectively approved and passed by the court; and upon the said eighth and final account it is ordered that a balance and distribution of the assets in hand be made in accordance with the provisions of the will of the deceased.”
Thus it is shown that the court did not undertake to define the provisions of the will or define the rights of the legatee. Nor does it appear that any instructions were asked or given. It only appears that the stock certificates were delivered to the legatee “ in accordance with the provisions of the will,” and when delivered to the wrong party in interest the rightful owner of the bonds or stocks so delivered can maintain an action against the trustee therefor. (Telegraph Go. v. Davenport, 97 U. S. 17., 369, 372.)
Judgment is awarded for plaintiff against the United States in the sum of $4,021.23.
Howry, J., on account of illness, took no part in the trial and decision of this case.