## UNITED STATES *v.* BORCHERLING.

### APPEAL FROM THE COURT OF CLAIMS.

No. 150. Argued January 30, 31, 1902.—Decided April 14, 1902.

The facts and law of this case were so fully and satisfactorily discussed in the Court of Claims that its opinion might well be adopted as that of this court.

That court held that the claimant Borcherling was entitled, on the facts shown, to recover from the United States the sum of seven thousand and nine hundred dollars, and this court holds that the conclusions of that court were correct and affirms the judgment.

The rule that, as between different states or sovereignties the courts of one will not aid the officers of another to withdraw funds or property of a decedent without providing for local creditors has no application to a case like the present.

The facts of this case were thus found by the Court of Claims:

" By act of Congress approved February 23, 1891, the Secretary of the Treasury of the United States was authorized and directed to adjust, upon principles of equity and justice, the accounts of Rodman M. Price, late purser in the United States Navy and acting navy agent at San Francisco, crediting him with the sum paid over to and receipted for by his successor, A. M. Van Nostrand, acting purser, January 14, 1850, and pay to said Rodman M. Price, or his heirs, out of any money in the Treasury not otherwise appropriated, any sum that may be found due him upon such adjustment.

"August 31, 1892, the Treasury officials adjusted Price's accounts and found there was due him $76,204.08, which included a credit of $75,000 that Price said he had advanced to Van Nostrand from his private funds.

"In 1857 Samuel Forrest recovered in the Supreme Court of New Jersey a judgment against Price for $17,000 and costs. Execution on that judgment was returned unsatisfied. Forrest died in 1869, intestate.

"In 1874 his widow, Anna M. Forrest, as administratrix of his estate, revived the judgment by *scire facias*. In her bill she prayed discovery, injunction, and the appointment of a receiver. Price and his wife answered. The cause slept till August 9, 1892, when Mrs. Forrest, administratrix, filed a petition stating that since filing her bill of complaint no payment had been made on the judgment against Price; that neither she nor her solicitors had been able to find any personalty or real estate belonging to Price by levy upon and sale of which any part of the amount due on the judgment could be obtained; that it had lately come to her knowledge that about $45,000 was about to be paid Price by officers of the Treasury of the United States; that that sum was to be paid by the delivery to Price or his attorneys of a draft of the Treasurer of the United States payable to his order; that said draft was to be made and the transaction closed on the 15th day of August thereafter; and if Price obtained said money he would, unless restrained, put the same beyond the reach of the petitioner.

"The petitioner prayed the appointment of a receiver of the draft, and that Price be ordered immediately on the receipt of such draft to endorse the same to the receiver, to the end that the same might be received by him as an officer of the court and disposed of according to law.

"The chancellor, August 8, 1892, issued a rule, returnable September 12, 1892, to show cause and restraining Price from making any endorsement of the draft referred to in the petition.

"A duly certified copy of the order was served upon Price August 10, 1892. Nevertheless after that date, Price received from the Assistant Treasurer of the United States at Washington and, without permission of the court, collected four several

drafts signed by that officer for the respective sums of $2704.08, $13,500, $20,000, and $9000, in all the sum of $45,204.08, leaving in the hands of the United States of the amount due on the settlement of Price's accounts the sum of about $31,000.

" On the 10th day of October, 1892, Charles Borcherling was appointed by the chancery court receiver in said cause of the property and things in action belonging or due to or held in trust for Price at the time of issuing said executions, or at any time afterwards, and especially of said four drafts, with authority to possess, receive and sue for such property and things in action and the evidence thereof; and it was made the duty of the receiver to hold such drafts subject to the further order of the court. The receiver was required to give bond in the sum of $40,000, conditioned for the faithful discharge of his duties. At the same time Price was ordered to convey and deliver to the receiver all such property and things in action and the evidence thereof, and especially forthwith to endorse and deliver the drafts to him, and he and all agents or attorneys appointed by him were enjoined and restrained from intermeddling with the receiver in regard to said drafts, and ordered, if in possession or control thereof, to deliver them to the receiver with an endorsement to that officer or to the clerk of the court for deposit; provided, the order should be void if the drafts other than the one for $9000 were delivered with Price's endorsement to the clerk, the proceeds to be deposited to the credit of the cause. Price was expressly enjoined from making any endorsement or appropriation of the drafts other than to the receiver or the clerk for deposit.

" The receiver gave the required bond, and having entered upon the duties of his office, he caused a copy of the above order to be served upon Price, and demanded compliance with its provisions.

" In 1892, the particular day not being stated, the chancery court issued an attachment against Price for contempt of court in disobeying the order of August 8, 1892. By an order made May 18, 1894, the court held him to be guilty of such contempt, and he was directed to pay the receiver the sum of $31,704.08, and a fine of $50 and costs, and in default of obedience to that

order to be imprisoned in the county jail until it was complied with. 7 Dickinson (52 N. J. Eq.), 61, 31. Upon appeal to the Court of Errors and Appeals the order of the chancery court was affirmed. 8 Dickinson (53 N. J. Eq.), 693.

"The Treasury Department, at the time of allowing the $76,204.08, withheld $31,000, under the provisions of the act of March 3, 1875, 18 Stat. 481, to await the determination of a suit to be instituted against Price, or surety upon Van Nostrand's bond as acting purser, United States Navy.

"The suit was instituted, but was dismissed some time previous to December 22, 1893.

"On the 16th of July, 1892, counsel for Mrs. Forrest wrote the Secretary of the Treasury referring to a previous letter to the Department of May 14, 1891, in the matter of the claim of Rodman M. Price, and asking to be seasonably advised in the case the Department took action in the direction desired by Price.

"The Secretary was advised that Mrs. Forrest could prove to the satisfaction of the Department that if Mr. Price did turn over $75,000, or any large sum, to the United States, a part of that sum, namely, $17,078.04, must have belonged to Mrs. Forrest; that it was trust money, and it would not be equitable to cause that much to be paid to Price.

"By letter of November 27, 1893, counsel for the receiver notified the Secretary of the Treasury of Borcherling's appointment and qualification by giving bond of $40,000; that Price, though personally enjoined, had, in contempt of the New Jersey court, endorsed the drafts and collected the proceeds. The letter inclosed is a certified copy of the order of the court, October 10, 1892, appointing the receiver. Counsel in behalf of the receiver made claim for the balance of $31,000, about to be paid Price under act of February 23, 1891.

"The letter closed as follows: 'I respectfully ask that comity be shown the chancellor of New Jersey, and that the draft to be issued in payment of the balance due and payable to the order of Rodman M. Price be not delivered (or mailed) to said Price or his attorney, but be transmitted to the chancery court of the State of New Jersey, at Trenton, N. J., where said Price's.

rights will be abundantly protected, the receiver, of course, being an impartial officer of the court. I request that before action is taken (other than as asked for by the receiver) due notice may be given me that the receiver may be heard, to set forth the reasons why this disposition should be made of the drafts in question. Let me add that the Forrest judgment and interest now exceeds the sum of $60,000.'

"On December 4, 1893, the chancery court of New Jersey, being informed by the receiver that Price, assisted by John C. Fay, Esq., his attorney, was endeavoring to obtain payment at the Treasury of the balance, about $30,000, of this debt, and appropriate it for his own use, issued orders against Price, enjoining him from seeking to obtain payment of any part of that sum.

"On December 6, 1893, the receiver notified the Secretary of the Treasury, by letter, that a copy of injunction of December 4 had been served upon Price, and enclosed a copy of the same to the Secretary. He also invited the attention of the Secretary to the opinion of the Court of Claims in *Redfield* v. *United States*, in the twenty-seventh volume of reports of the court; informed him that he (the receiver) had applied to the Supreme Court of the District of Columbia for an injunction, and asked, that if that court should not grant relief, he might have the benefit of the injunction of the New Jersey court now brought to the Secretary's notice. The receiver asked that if no relief were granted by the Supreme Court of the District that the Secretary send the drafts (otherwise to be handed to R. M. Price) to the chancellor of New Jersey, at Trenton.

"The Supreme Court of the District of Columbia, December 19, 1893, in a proceeding for injunction upon bill of Borcherling, receiver, and Anna M. Forrest, administratrix, after personal service upon Price and Fay, enjoined Price from receiving, assigning, collecting or endorsing to his own use, by himself or by attorney, any warrants or drafts from the Treasury of the United States in payment, in whole or in part, of any balance remaining unpaid under act of February 23, 1891, until the further order of the court; and it being the design of this order in nowise to interfere with the claim of any creditor of

the said Rodman M. Price, resident in this District against said Price, it is further ordered and decreed that, upon the representation of any person so claiming to be a creditor in this District and the establishment of such claim in a manner that shall satisfy the court of the *bona fide* existence of such claim, so much of said balance as shall be sufficient to cover any and all such claims so established shall be considered as exonerated from the effect of this decree.

"The Supreme Court of the District, on the 22d of December, 1893, passed the following order in the said suit:

"'From the affidavits of John C. Fay and Jeremiah M. Wilson, claimants, and the assent and affidavit of the said Rodman M. Price, filed this day, it appearing to the satisfaction of the court that John C. Fay, Richard J. Bright, Frank S. Bright, Samuel Shellabarger, J. M. Wilson and M. L. Woods, residents of the District of Columbia, appear to be *bona fide* creditors of the defendant, Rodman M. Price, and it appearing to the satisfaction of the court that as such they have *bona fide* claims for services rendered said Price, to the extent of $7900, it is ordered that the sum of seven thousand nine hundred dollars ($7900) shall be exonerated from the effects of the decree passed herein on the 19th of December, instant, restraining and enjoining Rodman M. Price from receiving, etc., any warrants and drafts from the Treasury in payment of the whole or any part of the balance due to him under the act of February 23, 1891; and said injunction order shall not operate to affect said sum of seven thousand nine hundred dollars.'

"Counsel for the receiver, Friday, December 22, 1893, addressed the Assistant Secretary of the Treasury, setting forth the fact that the order of that day had been hastily acted upon, and explaining that the judge sent a verbal order to counsel to be in court at 1 o'clock; that he had already told Mr. Fay, attorney of Price, that he wanted copies of his papers served two days in advance, in compliance with the rules; that at 12 o'clock he had been telegraphed for to go out of the city on account of illness in his family, and had sent a message to that effect to the judge. The letter also notified the Secretary that the receiver claimed that the money under the *Redfield* case be-

longed to the receiver and not to Price.   Counsel asked a reasonable delay, that he was obliged to leave Washington, but expected fully to return Saturday night, and expressed hope that 'no action will be railroaded through to pay out any money to-morrow.'   He also notified the Treasury that a mandatory order had been issued against Price in New Jersey, and asked that before any action was taken to paying Price, that he (counsel) might be heard to show reason why the money had not passed to the receiver under the ruling of the Redfield case, copy of which he enclosed.

" The same day counsel for the receiver sent the following telegram to the Secretary of the Treasury : ' Washington, D. C., December 22, 1893.—To Secretary of Treasury, Washington, D. C.: Please defer action in Price matter over to-morrow. The receiver notifies Treasury that he claims the money is his, not Price's, and will hold the United States responsible if paid Price or his attorney.   Frank W. Hackett, attorney for receiver.'

" On the same day, namely, Friday, December 22, 1893, the Acting Secretary of the Treasury endorsed a copy of the order of the Supreme Court of the District of Columbia of December 22, with a reference to the Second Comptroller to issue a certificate in favor of Rodman M. Price for $7900, 'the balance to be withheld pending an injunction against Price from receiving said balance.'

" On the same day, Friday, December 22, 1893, Second Comptroller certified that there were due and payable to Rodman M. Price $7900 ; the balance, $23,100, to be withheld 'pending an injunction against Price from recovering said balance now pending before the Supreme Court of the District of Columbia.'

" The draft on navy warrant No. 907, dated December 23, 1893, and payable to the order of Rodman M. Price, late purser, United States Navy, for $7900, was paid at the Treasury December 23, 1893, by the Treasurer of the United States, said draft being endorsed ' Rodman M. Price, late purser, United States Navy ; John C. Fay.'

" On the 25th of December, 1893, Borcherling, receiver, addressed a letter to the Secretary of the Treasury, claiming that

on and after October 10, 1892, all property in the right to Price to receive from the United States the balance under the act approved February 19, 1891, passed to him, the receiver. He reminded the Secretary that on the 27th of November, 1893, he had the honor of advising the Treasury of his appointment and enclosing a copy of the order of the chancellor; that Mr. Fay, attorney for Mr. Price, had full notice of the receivership as well as of the injunction of the court of chancery addressed to Price and his attorneys forbidding them from receiving any part of the $31,000; and that both Fay and Price had committed contempt of court. The receiver asked the secretary to take the opinion of the Attorney General upon the following questions: .

" 1. Did the appointment of a receiver by the Chancery Court of New Jersey convey to that officer the property in the claim against the United States of Rodman M. Price?

" 2. Would payment to the receiver be a quittance to the United States in the premises?

" 3. Can the Secretary of the Treasury safely pay to Rodman M. Price or his heirs the money still unpaid under the act of February 19, 1891, now that the receiver claims that it should be paid over to him?

" A similar letter was addressed by the receiver and his counsel to the Secretary of the Navy.

" On April 1, 1899, the Comptroller ordered the balance, $23,100, to be paid to Charles Borcherling, receiver, and the same was paid at the Treasury that day to Mr. Borcherling, the present claimant.

" Upon the foregoing findings of fact the court decide, as a conclusion of law, that the claimant is entitled to recover from the United States the sum of seven thousand and nine hundred dollars ($7,900)."

Thereafter an appeal was allowed and taken to this court.

*Mr. William H. Button* for the United States. *Mr. Assistant Attorney General Pradt* was on his brief.

*Mr. Cortlandt Parker* and *Mr. Frank W. Hackett* for Borcherling.

Mr. Justice Shiras delivered the opinion of the court.

The facts and law of this case were so fully and satisfactorily discussed in the court below that its opinion might well be adopted as that of this court. 35 C. Cl. 311.

We shall, however, briefly examine some of the propositions urged in the brief of the Government filed in the case.

The first and principal contention is that the United States is a sovereignty and has absolute control of the manner in which it shall pay its debts, the persons to whom they shall be paid, and, in fact, whether they shall be paid or sued upon at all; that it is incompetent for the State of New Jersey, through a statute or a decree of its courts, to direct to whom such a debt shall be paid; that the United States, through comity, may or may not recognize such a New Jersey statute or decree, as it may determine, but without such recognition such statute or decree is inoperative upon the disposition of such debt; that the United States does not recognize, through comity, the passing of title to a claim against it to a receiver appointed under a state statute or decree, and that consequently, in the present case, the United States had a right to pay the debt to the original creditor, and was discharged by such payment.

It is not necessary for us to consider whether the power of the United States over debts due by it and over the mode by which such debts shall be paid is wholly unrestricted, because the United States has not chosen to stand upon its sovereignty in such particulars, but has provided in the act of March 3, 1887, c. 359, that the Court of Claims and, concurrently, the District and Circuit Courts of the United States, " shall have jurisdiction to hear and determine all claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of any executive department, or upon any contract, express or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity or admirality, if the United States were suable."

This is not a case within the category of payments by way of gratuity, payments as of grace and not of right, as was the case of *Emerson's Heirs* v. *Hall*, 13 Pet. 409, and where it was said by Mr. Justice McLean : " A claim having no foundation in law, but depending entirely on the generosity of the government, constitutes no basis for the application of any legal principle. It cannot be assigned. It does not go to the administrator as assets. It does not descend to the heir. And if the government, from motives of public policy, or any other considerations, shall think proper, under such circumstances, to make a grant of money to the heirs of the claimant, they receive it as a gift or pure donation—a donation made, it is true, in reference to some meritorious act of their ancestor, but which did not constitute a matter of right against the government. In the present case the government might have directed the money to be paid to the creditors of Emerson, or to any part of his heirs. Being the donor, it could, in the exercise of its discretion, make such distribution or application of its bounty as circumstances might require. And it has, under the title of an act 'for the relief of the heirs of Emerson,' directed, in the body of the act, the money to be paid to his legal representatives. That the heirs were intended by this designation is clear ; and we think the payment which has been paid to them under this act has been rightfully made; and that the fund cannot be considered as assets in their hands for the payment of debts."

This distinction between mere grants by the government by way of gratuity and debts or claims of right was likewise recognized by this court in the French spoliation cases, where it was held that the payments prescribed by the acts of Congress were gratuities, and that creditors, legatees and assignees in bankruptcy could be rightfully excluded. *Blagge* v. *Balch*, 162 U. S. 439.

Here the government was not the donor of the money of Price, but was its custodian, awaiting its lawful distribution.

As to the contention that the debt due from the United States to Price could not be transferred from Price to the claimant by operation of the laws of New Jersey, nor by any decree that

the courts of New Jersey, operating under such laws, could make, it is sufficient to say that this court has held otherwise.

In *Vaughn* v. *Northrup*, 15 Pet. 1, Mr. Justice Story, delivering the opinion of the court, said: "The debts due from the government of the United States have no locality at the seat of government. The United States in their sovereign capacity have no particular place of domicile, but possess, in contemplation of law, an ubiquity throughout the United States; and the debts due by them are not to be treated like the debts of a private debtor, which constitute local assets in his own domicile," and accordingly it was held, in that case, that "the administrator of a creditor of the government duly appointed in the State where the creditor was domiciled at the time of his death, has full authority to receive payment and give a full discharge of the debt due his intestate in any place where the government may choose to pay it, whether it be at the seat of government or at any other place where the public funds are deposited; and that moneys so received constituted assets under that administration, for which he was accountable to the proper tribunals of the State where he was appointed."

*Price* v. *Forrest*, 173 U. S. 410, was one phase in the present controversy. There the question was between the heirs of Rodman M. Price and Borcherling, who had been appointed by the Chancery Court of New Jersey receiver of the assets of Price, including the money belonging to him in the Treasury of the United States. It was held by the courts of New Jersey that the receiver was entitled to the money in the Treasury, and the heirs and administrator of Price were enjoined from demanding or receiving from the Secretary of the Treasury, or any officer thereof, the said money or any part thereof. The cause was brought to this court, and, after full consideration, the decree of the Court of Errors and Appeals of the State of New Jersey was affirmed. Two things were thus determined—first, generally, that it was competent for a state court of the domicil of a creditor of the United States, and having jurisdiction over his person, to decide a controversy between his heirs and creditors as to the right to receive moneys held in trust by the United

States; and, second, specifically, under the facts of the present case, that the title to the moneys of Price in the Treasury of the United States had passed, under the laws of the State of New Jersey and the decree of its courts, from Price and his heirs, and had become vested in Borcherling, tho receiver.

It is not open to doubt that the Court of Claims has jurisdiction to entertain the claim of the receiver to receive the fund, the title to which had thus become vested in him. The jurisdiction of that court extends throughout the United States. It issues writs to every part of the United States, and is specially authorized to enforce them. 10 Stat. 612, c. 122, sec. 3. By establishing this court, the United States created a tribunal to determine the right to receive moneys due by the government. Such legislation did not leave the Treasury or its officers free to arbitrarily select, between conflicting claimants, the one to whom payment should be made.

It is finally contended, in behalf of the government, that even if it was competent for the state courts to determine the controversy between the rival claimants to this fund, and even if the Court of Claims has jurisdiction to give effect to such determination, yet the rights of creditors resident within the District of Columbia were paramount to those of the New Jersey receiver, and that a payment made directly to them by the acting Secretary of the Treasury would be a lawful discharge of the United States.

Undoubtedly, as between different States or sovereignties, the general rule is that the courts of one will not aid the officers of another to withdraw funds or property of a decedent without providing for local creditors. But such a rule has no application in a case like the present, where the government of the United States has ubiquity in all the States of the Union, and does not hold moneys due a creditor subject to the local demands or claims of residents of the District of Columbia. Moreover, such a rule is for a court having control over the fund in dispute. It is not for a ministerial officer of the Treasury, having no judicial powers, to give effect to such demands.

It is, indeed, suggested that the action of the Supreme Court

of the District of December 22, 1893, was a legal determination which operated to relieve Price, as to a portion of this fund, from the injunction of that court, enjoining him from receiving or collecting moneys due him in the Treasury of the United States, and to authorize the Treasurer of the United States to pay such portion of the fund in disregard of the decree of the New Jersey court.

But it is obvious that the Supreme Court of the District had no jurisdiction or control over the money in the Treasury of the United States. It was dealing only with the parties before it, of whom the United States was not one. The order referred to doubtless did relieve Price from the existing injunction of that court, and left him free, so far as that injunction was concerned, to urge his claim against the United States; but it did not, and could not, relieve Price from the injunction and decree of the New Jersey court. Nor could such order operate as a legal adjudication, which would permit the Treasurer of the United States to disregard the decree of the courts of New Jersey and the title of the receiver thereunder, of which the department had full notice. In point of fact, inspection shows that this order was not intended as an adjudication. It was merely *ex parte*, and its only purpose or effect was to permit Price to push elsewhere his claim against the government. Such an order could not have been the subject of an appeal, even if an opportunity had been afforded to the receiver to take an appeal.

When analyzed, this contention will be perceived to be only a renewal of the one already considered, namely, that a ministerial officer, having no judicial or statutory powers in the premises, in a case wherein the government was the debtor, could arbitrarily, without notice to the legal holder of the claim, pay the money in dispute in this case over to Price. This, we have seen, he had no power under the law to do, and such a disposition of the money could not be successfully pleaded in the Court of Claims as a lawful discharge of the United States.

For these reasons, and referring, for a fuller discussion of the questions involved, to the opinion of the Court of Claims, we

think the conclusions of the court were correct, and its judgment is accordingly

*Affirmed.*

Mr. Justice White dissented.

Mr. Justice Harlan took no part in the decision of this case.