## ORINOCO IRON CO. v. METZEL.

(Circuit Court of Appeals, Sixth Circuit. February 11, 1916.)

No. 2837.

1. BANKRUPTCY ⬤⇒211—JURISDICTION OF COURTS OF BANKRUPTCY.

As to property within the custody of the bankruptcy court, its exclusive jurisdiction over the general administration of the bankrupt's estate carries with it exclusive authority to determine, not only the claims of creditors, but also adverse claims, whether by way of ownership or paramount liens.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321, 323; Dec. Dig. ⬤⇒211; Courts, Cent. Dig. § 1331.]

2. BANKRUPTCY ⬤⇒211—JURISDICTION OF COURTS OF BANKRUPTCY.

The rule which gives the bankruptcy court exclusive jurisdiction to determine claims to property in its custody is not limited to actual possession, but extends to constructive possession as well, including property held not only by, but for, the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321, 323; Dec. Dig. ⬤⇒211; Courts, Cent. Dig. § 1331.]

3. BANKRUPTCY ⬤⇒211—JURISDICTION OF COURTS OF BANKRUPTCY.

A concession by Venezuela passed by assignment to the O. Corporation, and was afterwards annulled by the Venezuelan government. The government of Venezuela agreed to pay $385,000, in eight annual payments, for the benefit of the O. Corporation and its predecessors, and two of such payments had been made, when the O. Corporation was adjudicated a bankrupt. Certain of the O. Corporation's predecessors assigned their claims to the indemnity fund to the O. Corporation, and it was agreed between its trustee in bankruptcy and another of such predecessors that all of the indemnity, except $75,000, should be paid to the trustee. The State Department gave notice to all claimants of this distribution, and thereafter the amount then payable to the trustee thereunder was paid by the United States Treasurer to the trustee. Subsequently a bill was filed in the Supreme Court of the District of Columbia to establish an equitable lien on the indemnity fund, and the Treasury officials were enjoined from delivering any warrant on the fund. This suit was subsequently settled. Subsequent to the distribution agreement, the O. Iron Company, which had a contract with one of the O. Corporation's predecessors for mining on the concession, filed a claim with the trustee in bankruptcy, and still later filed suit in the District of Columbia to establish a trust ex maleficio in the fund in its favor. The bankruptcy court enjoined it from prosecuting this suit and ordered it dismissed. The United States government recognized the right of the trustee in bankruptcy, and had refrained from paying installments because of the action of the courts of the District of Columbia. Held, that the bankruptcy court had exclusive jurisdiction over the fund and the claim thereto presented in the suit in equity, and properly granted such injunction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321, 323; Dec. Dig. ⬤⇒211; Courts, Cent. Dig. § 1331.]

4. BANKRUPTCY ⬤⇒11—JURISDICTION OF COURTS OF BANKRUPTCY.

Generally speaking, the jurisdiction of courts of bankruptcy in the administration of bankrupt estates extends to all matters of bankruptcy without limitation, is co-extensive with the United States, and knows no state or district boundaries, though it may not enforce its process or orders outside the limits of its territorial jurisdiction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. ⬤⇒11.]

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. BANKRUPTCY ⬥212—JURISDICTION OF COURTS OF BANKRUPTCY.

A court of bankruptcy, in determining conflicting claims to property in its custody, acts essentially as a court of equity.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 236; Dec. Dig. ⬥212; Courts, Cent. Dig. § 1331.]

6. BANKRUPTCY ⬥20—JURISDICTION OF COURTS OF BANKRUPTCY.

Where the trustee in bankruptcy obtained an order from the bankruptcy court restraining the prosecution of a suit in another court, and thereafter the party enjoined moved to vacate such order, and the bankruptcy court denied such motion and entered a decree enjoining it from prosecuting such suit, it did not affect the jurisdiction of the bankruptcy court that the first restraining order was made without notice.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. ⬥20; Courts, Cent. Dig. §§ 119, 1331.]

7. BANKRUPTCY ⬥212—JURISDICTION OF COURTS OF BANKRUPTCY.

A bankruptcy court, having jurisdiction to determine conflicting claims to a fund, had jurisdiction to enjoin the prosecution of actions tending to interfere with the administration of such fund.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 236; Dec. Dig. ⬥212; Courts, Cent. Dig. § 1331.]

8. BANKRUPTCY ⬥328—CLAIMS—TIME FOR FILING.

A claim sent to a trustee in bankruptcy within one year after the adjudication was filed in time.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 518; Dec. Dig. ⬥328.]

9. BANKRUPTCY ⬥440—REVIEW OF PROCEEDINGS—APPEAL OR PETITION TO REVISE.

Where the bankruptcy court enjoined the prosecution of a suit to establish a trust in a fund over which it had exclusive jurisdiction, and the merits of the claim set up in such suit had not been decided, a petition to revise the order granting the injunction, and not an appeal therefrom, was the proper remedy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. ⬥440.]

Petition to Revise and Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

In the matter of the Orinoco Corporation, bankrupt. From an order obtained by Harry V. Metzel, trustee, restraining the Orinoco Iron Company from prosecuting a suit, and ordering it to dismiss the suit, the Orinoco Iron Company appeals and files a petition to revise. Appeal dismissed, and order affirmed.

William R. Harr and Edward S. Duvall, Jr., both of Washington, D. C., and Milner, Miller & Searl, of Portsmouth, Ohio, for petitioner and appellant.

W. S. Little, of Cincinnati, Ohio (T. B. Paxton, Jr., of Cincinnati, Ohio, of counsel), for respondent and appellee.

Before KNAPPEN and DENISON, Circuit Judges, and COCHRAN, District Judge.

KNAPPEN, Circuit Judge. This review involves the validity of an order made by the court below, sitting in bankruptcy, upon the

petition of the trustee in bankruptcy of the Orinoco Corporation, enjoining the Orinoco Iron Company (hereafter called the Iron Company) from prosecuting a suit instituted by it in the Supreme Court of the District of Columbia, to enforce its alleged rights in the so-called Orinoco indemnity fund in the Treasury of the United States. The history of that fund is briefly this:

In the year 1883 the government of the republic of Venezuela gave to one Fitzgerald a 99-year lease of a large tract of land for mining and other purposes. This concession was afterwards assigned by Fitzgerald to the Manoa Company, Limited, by the latter to the Orinoco Company, by that company to the Orinoco Company, Limited, and by the last-named company to the Orinoco Corporation. In 1897 the Orinoco Company, Limited, made a contract with the Iron Company for mining on the concession. After the latter had operated to some extent the government of Venezuela declared a forfeiture of the contract, and caused the concession to be annulled, the Orinoco Company, Limited, to be ousted therefrom, and caused or permitted certain property used in operations upon the concession to be confiscated. Through the government of the United States the claims of the Orinoco Corporation and its three predecessors in interest (viz., the Manoa Company, Limited, the Orinoco Company, and the Orinoco Company, Limited), were presented to the government of Venezuela, with the result that that government, on September 9, 1909, made an agreement of settlement with the United States whereby Venezuela was to pay to the latter $385,000 in eight annual payments of $48,125 each, for the benefit of the Orinoco Corporation and its three predecessors, in satisfaction of all claims of those four corporations, including the alleged seizure and destruction of a certain steamer by the military forces of Venezuela.

The first payment under this settlement was made by Venezuela into the Treasury of the United States in September, 1909, and on January 13th following the Department of State gave notice to all persons interested of the fact of the payment, that the Department would take up as soon as possible the question of the distribution of the award to those prima facie entitled thereto, and that prima facie the four corporations named were entitled to be heard in deciding upon such disposition. The second payment under the settlement was made by Venezuela in September, 1910, and likewise paid into the Treasury of the United States. On December 20, 1910, the Orinoco Corporation was adjudicated bankrupt by the District Court below; and the Manoa Company, Limited, and the Orinoco Company having assigned to the Orinoco Corporation their claims to the indemnity fund, its distribution was by agreement between the receiver of the Orinoco Company, Limited, and the trustee in bankruptcy of the Orinoco Corporation (with the approval of the District Court below, in bankruptcy, in the case of the Orinoco Corporation, and of the Minnesota court having charge of the insolvency proceedings of the Orinoco Company, Limited), and other interested parties, so arranged as that the Orinoco Company, Limited, was to receive $75,000 and the remainder of the indemnity fund (after paying $8,000 to certain attorneys and deduct-

ing upwards of $6,000 on account of expenses incurred by the government of the United States in the settlement of the claims), was to be paid to the trustee in bankruptcy of the Orinoco Corporation. Notice of this disposition and distribution was given by the Department of State to all claimants June 20, 1911; and on July 27th following the United States Treasurer's warrant for $70,263.97 (the amount so payable to the trustee in bankruptcy on account of the installments thus far paid) was paid by the Treasurer, and was by the trustee distributed in the administration of the estate.

Meanwhile, on June 30, 1911, one Safford, claiming to be a stockholder and creditor of the Manoa Company, Limited, filed his bill in the Supreme Court of the District of Columbia, claiming an equitable lien upon the indemnity fund and asking a receivership over the installments already paid into the Treasury; and the trustee in bankruptcy of the Orinoco Corporation, having already received the Treasurer's warrant mentioned, was appointed receiver in the Safford case and enjoined from disposing of any of the funds, except by paying the same to himself as receiver; and the Secretary of the Treasury and the Treasurer of the United States were enjoined from delivering outside of the District of Columbia any warrant on the fund. Fitzgerald, who was made defendant by cross-bill, also set up an equitable lien to the fund, claiming that certain of the properties had been reconveyed to him by the Manoa Company, Limited, and excepted from subsequent conveyances. On December 14th following (1911), the Orinoco Iron Company sent to the trustee in bankruptcy of the Orinoco Corporation, at his office in Cincinnati, its claim against that corporation for $1,173,500, as the value of its lease from the Orinoco Company, Limited, plus alleged expenditures of the Iron Company in developing and exploiting the property, including money spent in defense of the title in the Venezuela litigation, alleging that the Orinoco Corporation had acquired all the assets and assumed all the liabilities of the limited company. Motion to expunge the claim was made by certain creditors, for the reason, among others, that the claim was not filed within a year. The motion and the claim are still pending.

On November 6, 1914, the District Court, in bankruptcy, authorized a settlement of the Safford and Fitzgerald litigation in the Supreme Court of the District of Columbia, upon the payment to those parties of the aggregate sum of $35,000. On November 13, 1914, the Iron Company filed an original bill in the Supreme Court of the District of Columbia against the Secretary of the Treasury, the Treasurer of the United States, the Orinoco Corporation, and others, asking that a trust ex maleficio in the fund be declared in its favor as against all adverse claimants; and on the next day an order was made restraining Safford, Fitzgerald, and the Orinoco Corporation and its predecessors in interest, including the representatives of the Orinoco corporation and the Orinoco Company, Limited (as well as other defendants), from interfering with the prosecution of the Iron Company's suit. On November 17th the injunction orders obtained by Safford and Fitzgerald against the Orinoco Corporation in the Safford suit were dissolved by the court; the settlement, however, seems not to have been yet carried out.

On November 17, 1914, the trustee in bankruptcy of the Orinoco Corporation obtained an order from the District Court below, in bankruptcy, restraining the prosecution of the Iron Company's suit in the District of Columbia. Judge Hollister, upon careful consideration, overruled the Iron Company's motion to vacate this restraining order, and entered decree enjoining the Iron Company, during the pendency of the bankruptcy proceedings, from prosecuting suit in the District of Columbia or any suit elsewhere against the trustee of the Orinoco Corporation, and from interfering with the action of the trustee in bankruptcy in receiving, and bringing into the bankruptcy court, the installments of the indemnity fund which he would otherwise receive through the United States Treasury, to await the bankruptcy court's adjudication of the rights of the respective parties. The Iron Company was also ordered to dismiss its suit in the District of Columbia as against the Secretary of the Treasury and the Treasurer of the United States and the Orinoco Corporation and its trustee. This is the decree sought to be reviewed.

The trustee in bankruptcy contends that the District Court for the Southern District of Ohio, sitting in bankruptcy, has exclusive jurisdiction to try and determine the claim asserted by the Iron Company under its bill in the Supreme Court of the District of Columbia. The correctness of this contention is here the ultimately decisive question. As the order adjudicating the Orinoco Corporation bankrupt has not been appealed from (and, indeed, was consented to), we must assume, in the absence of assignment of error or argument challenging the fact, that the District Court had jurisdiction to so adjudicate and to administer the bankrupt's estate generally.

[1] Passing for the present the question of extraterritorial jurisdiction, it is clear that as to property within the custody of the bankruptcy court its exclusive jurisdiction over the general administration of the bankrupt's estate (Acme Co. v. Beekman Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208; In re Yaryan Naval Stores Co. [C. C. A. 6th Cir.] 214 Fed. 563, 565, 131 C. C. A. 15) carried with it exclusive authority to determine, not only the claims of creditors, but also adverse claims, whether by way of ownership or paramount liens (Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157; Wabash Ry. Co. v. Adelbert College, 208 U. S. 38, 54, 28 Sup. Ct. 182, 52 L. Ed. 379; Murphy v. John Hofman Co., 211 U. S. 562, 568, 29 Sup. Ct. 154, 53 L. Ed. 327; Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Hebert v. Crawford, 228 U. S. 204, 208, 33 Sup. Ct. 484, 57 L. Ed. 800). The case is not within decisions such as Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128, and In re Rohrer (C. C. A. 6th Cir.) 177 Fed. 381, 100 C. C. A. 613, where the court whose jurisdiction to enforce prior liens had attached previous to the bankruptcy was not interfered with; for here no such action was had before bankruptcy.

[2] Was the fund in question in the custody of the bankruptcy court? The rule which gives the bankruptcy court exclusive jurisdiction to determine claims to property in its custody is not limited to actual possession, but extends to constructive possession as well, in-

cluding property held not only by but for the bankrupt. Mueller v. Nugent, 184 U. S. 1, 14, 17, 22 Sup. Ct. 269, 46 L. Ed. 405; Whitney v. Wenman, supra, at pages 552, 553, of 198 U. S., 25 Sup. Ct. 778, 49 L. Ed. 1157; Lazarus v. Prentice, 234 U. S. 263, 266, 34 Sup. Ct. 851, 58 L. Ed. 1305; Thomas v. Woods (C. C. A. 8th Cir.) 173 Fed. 585, 590, 97 C. C. A. 535, 26 L. R. A. (N. S.) 1180, 19 Ann. Cas. 1080; Clay v. Waters (C. C. A. 8th Cir.) 178 Fed. 385, 392, 101 C. C. A. 645; In re Schermerhorn (C. C. A. 8th Cir.) 145 Fed. 341, 342, 76 C. C. A. 215. And see O'Dell v. Boyden (C. C. A. 6th Cir.) 150 Fed. 731, 737, 80 C. C. A. 397, 10 Ann. Cas. 239. And we have held that a debt due the bankrupt's estate is so far constructively in the trustee's possession as to give the bankruptcy court jurisdiction to determine the rights of parties to it. In re Ransford, 194 Fed. 658, 664, 115 C. C. A. 560.

[3] The concrete question thus is whether at the time bankruptcy jurisdiction attached the fund in question was being actually held for the benefit of the Orinoco Corporation, and so passed into the constructive possession of the bankruptcy court. It seems clear that when bankruptcy occurred the fund, so far as here in question, was being held by the United States purely for the benefit of the bankrupt's estate. So far as the holding for the latter's benefit had not been made definite when bankruptcy occurred, it was made so later by virtue of the distribution agreement, which antedated even the Safford suit. The United States unequivocally recognized the right of the trustee in bankruptcy to the portion of the fund so set apart for it; it not only turned over to the trustee in bankruptcy the net amount of the proceeds of the first two installments, but has ever since been ready to turn over the net balance of the remaining installments; it has refrained from so doing only because of the action of the courts of the District of Columbia. The United States has never recognized the right of the Iron Company to participate in the fund; the fact that the Department of State considered the determination of claims to this fund outside its jurisdiction does not, in our opinion, alter the situation in this regard. The fund here in question was not, so far as the record suggests, being even claimed adversely by the Iron Company when bankruptcy occurred, except as it claimed as a creditor the right to a prior lien for its alleged debt. The Iron Company was in no way a party to the award which produced the fund, but, on the contrary, asserts in its bill that the arbitration and award were not authorized by it. Its lack of actual adverse claim when bankruptcy occurred is evidenced by its assertion in the bankruptcy court of its claim as creditor. Whether it thereby precluded itself from later asserting a wholly adverse claim we need not consider.

While the question is not free from difficulty, we think that, were the fund in question actually held in the Southern District of Ohio, it should properly be regarded as so far within the constructive custody of the bankruptcy court as to preclude jurisdiction by a state court of Ohio over a bill of the nature of that filed in the Supreme Court of the District of Columbia. The question is whether the fact that the fund was held in the Treasury of the United States alters the rule. No question of the right of the United States to the fund is

involved. The government makes no claim to it in whole or in part. It is merely a custodian and a trustee, recognizing (so far as concerns the fund involved here) that it holds only for the bankrupt's estate. The facts that the seat of government is in the District of Columbia, and that the general treasury of the United States is there situated, do not necessarily affect the issue; for "the United States, in their sovereign capacity, have no particular place of domicile, but possess, in contemplation of law, a ubiquity through the Union." Vaughan v. Northup, 15 Pet. 1, 6, 10 L. Ed. 639. And so it is settled that debts owing by the United States are not local assets at the seat of government only, so as to give jurisdiction to the courts of the District of Columbia, by way of administration of the estates of deceased persons with respect to such debts. Vaughan v. Northup, supra; Wyman v. Halstead, 109 U. S. 654, 3 Sup. Ct. 417, 27 L. Ed. 1068; Taylor v. Bemiss, 110 U. S. 42, 45, 3 Sup. Ct. 441, 28 L. Ed. 64; United States v. Borcherling, 185 U. S. 223, 235, 22 Sup. Ct. 607, 46 L. Ed. 884. We think it follows that the courts of the District of Columbia obtained no jurisdiction as against the District Court for the Southern District of Ohio, in bankruptcy, from the mere fact that the fund was in the Treasury of the United States.

We find nothing to the contrary of this view in Jones v. Rutherford, 26 App. Cas. D. C. 114, 121, relied upon by the Iron Company. That case is in our opinion readily distinguishable. There no question of rival administrations was presented; the question related only to the manual possession of "a draft drawn by the United States and ready to be delivered to the person lawfully entitled to its possession." The draft itself was held to be property and within the district. The instant case involves conflicting administrations and goes beyond the mere question of manual possession of a draft, which latter question is, at best, merely an incident of the broader question involved.

[4] Generally speaking, the jurisdiction of courts of bankruptcy in the administration of bankrupt estates extends "to all matters of bankruptcy without limitation. It is coextensive with the United States." It knows no state or district boundaries. Thomas v. Woods, supra, at page 590, of 173 Fed., 97 C. C. A. 535, 26 L. R. A. (N. S.) 1180, 19 Ann. Cas. 1080; Lathrop v. Drake, 91 U. S. 516, 517, 23 L. Ed. 414; Babbitt v. Dutcher, 216 U. S. 102, 109, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Staunton v. Wooden (C. C. A. 9th Cir.) 179 Fed. 61, 63, 102 C. C. A. 355. It may order the sale of land in another state, and without ancillary proceedings therein. Robertson v. Howard, 229 U. S. 254, 261, 33 Sup. Ct. 854, 57 L. Ed. 1174. True, the bankruptcy court may not enforce its process or its orders outside the limits of its territorial jurisdiction, that is to say, its jurisdiction must be exercised within its own district; but, having the proper parties before it, it can within its own district make necessary orders to protect its jurisdiction. And a court of bankruptcy in another jurisdiction could, if necessary, entertain ancillary proceedings for the recovery of property. Babbitt v. Dutcher, supra, at page 105, of 216 U. S., 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969. And see Elkus, Petitioner, 216 U. S. 115, 30 Sup. Ct. 377, 54 L. Ed. 407.

[5] A court of bankruptcy, in determining conflicting claims to prop-

erty in its custody acts essentially as a court of equity; and we think the case presented is within the well-established rule that, where the necessary parties are before a court of equity, it is immaterial that the subject-matter of the controversy, whether real or personal property, is beyond the territorial jurisdiction of the court. In such case the power exists to compel a defendant to do all things necessary which he could do voluntarily to give full effect to the decree against him. Obedience to the decrees so made is enforced by means of process against the person. We cite in the margin a few of the many authorities asserting this jurisdiction.[1]

The Supreme Court of the District of Columbia had thus, in our opinion, no jurisdiction over the suit whose prosecution has been enjoined by the bankruptcy court, not only because the jurisdiction of the latter court had already attached, but because that jurisdiction, in the circumstances presented, is exclusive. The case of Lyttle v. Security Co., 43 App. Cas. D. C. 136, relied on by the Iron Company, is distinguishable. In that case a surety on the bond of a defaulting contractor for a government work filed a bill to enforce subrogation for the amount the surety had been compelled to pay in completing the contract. The claim to subrogation seems to have been asserted before, although the bill was not filed until after bankruptcy. The government does not appear to have recognized the right of the trustee in bankruptcy to the fund, and the trustee conceded the surety's claimed right to subrogation, but there was no surplus above the surety's claim. We think it clear also that the trustee in bankruptcy has taken no action amounting to a consent to the jurisdiction of the courts of the District of Columbia.

[6, 7] The order for injunction, which is the subject of this review, was made upon notice to the Iron Company, which was fully heard in opposition thereto. That the earlier restraining order was made without notice does not affect jurisdiction; and the bankruptcy court having jurisdiction to determine conflicting claims to the fund clearly had jurisdiction to enjoin the prosecution of actions forbidden by that jurisdiction, tending to interfere with the administration of the debtor's property in bankruptcy. In re Schermerhorn (C. C. A. 8th Cir.) 145 Fed. 341, 76 C. C. A. 215; Morehouse v. Powder Co. (C. C. A. 9th Cir.) 206 Fed. 24, 28, 124 C. C. A. 158.

It follows from what we have said that it was not necessary for the Iron Company (as it contends) to proceed in both jurisdictions for the protection of its rights. The contention that relief as against predecessor corporations cannot be afforded elsewhere than in the District of Columbia does not impress us. The Manoa Company, Limited, and the Orinoco Company have released their rights to the Orinoco Cor-

[1] Massie v. Watts, 6 Cranch, 148, 3 L. Ed. 181; Muller v. Dows, 94 U. S. 444, 449, 24 L. Ed. 207; Phelps v. McDonald, 99 U. S. 298, 308, 25 L. Ed. 473; Philadelphia Co. v. Stimson, 223 U. S. 605, 622, 32 Sup. Ct. 340, 56 L. Ed. 570; Robertson v. Howard, supra; Fall v. Eastin, 215 U. S. 1, 8, 30 Sup. Ct. 3, 54 L. Ed. 65, 23 L. R. A. (N. S.) 924, 17 Ann. Cas. 853; Louisville & Nashville Ry. Co. v. Western Union Tel. Co. (C. C. A. 6th Cir.) 207 Fed. 1, 6, 124 C. C. A. 573; O'Dell v. Boyden (C. C. A. 6th Cir.) 150 Fed. 731, 736, 80 C. C. A. 397, 10 Ann. Cas. 239.

poration, and so much of the fund as passed to the Orinoco Company, Limited, fell under the jurisdiction of a state court of Minnesota. But it should be enough to say that the decree complained of does not interfere with the assertion of rights against predecessor corporations. We think the order complained of does not deprive the Iron Company of its day in court, for the decree under review does not determine any adverse claims of the Iron Company, or do more than to retain jurisdiction in the bankruptcy court as against other courts.

[8] The bankruptcy court not only has jurisdiction over the Iron Company's claim as creditor, which we think clearly filed in time (Orcutt v. Green, 204 U. S. 96, 27 Sup. Ct. 195, 51 L. Ed. 390; Bennett v. American Co. [C. C. A. 6th Cir.] 159 Fed. 624, 86 C. C. A. 614), including power to allow amendments of the claim in furtherance of justice (In re Hamilton Automobile Co. [C. C. A. 7th Cir.] 209 Fed. 596, 126 C. C. A. 418; In re Kessler [C. C. A. 2d Cir.] 184 Fed. 51, 107 C. C. A. 13; Bennett v. American Co., supra), but, as we have already said, has complete jurisdiction over the case presented by the bill in equity, assuming, for the purposes of this opinion, that such case differs in material and practical aspects from the case made by the claim for creditor's lien; and we must assume that the bankruptcy court will give the Iron Company due opportunity to be heard.

We expressly refrain from expression of opinion upon the merits either of the creditor's claim filed or of the subject-matter of the bill in equity, as well as upon the questions whether the bill asserts an adverse claim within the meaning of the applicable rules, and whether merely by filing its claim as creditor appellant submitted to the jurisdiction of the bankruptcy court over the subject-matter of its bill. Under the view we take of the case those questions are here immaterial. We have also omitted from the statement of the case matters which seemed to bear no immediate relation to the single issue with which we have to deal.

Of the complaint that the Iron Company has not been heard respecting the authority to settle the claims of Safford and Fitzgerald it seems sufficient to say that that matter is apparently not embraced within the order under review, and so is not concluded thereby. But to save any question the disposition we shall make will be expressly without prejudice to the right of the Iron Company to present to the bankruptcy court such application as it may be advised, for hearing and reconsideration in that regard.

[9] The case is here both on appeal and on petition to revise. We think the question of remedy is ruled by the holding of this court in O'Dell v. Boyden, supra, where petition to revise was held the proper remedy. We are disposed to think the fact that the merits of the Iron Company's claim have not been decided, but are reserved for future decision, distinguishes the case from Bothwell v. Fitzgerald (C. C. A. 9th Cir.) 219 Fed. 408, 413, 135 C. C. A. 212, and Thomas v. Woods, supra, at page 588, of 173 Fed., 97 C. C. A. 535, 26 L. R. A. (N. S.) 1180, 19 Ann. Cas. 1080, et seq.

The appeal is accordingly dismissed, and the petition to revise re-

tained. We think the criticisms upon the form and contents of the petition without force.

The order and decree of the District Court is affirmed, with costs.