## JACKSON v. LYNCH.
### In re WOODRUFF'S ESTATE.
### No. 9401.

Circuit Court of Appeals, Ninth Circuit.

May 10, 1940.

Rehearing Denied June 21, 1940.

Francis B. Cobb, of Los Angeles, Cal., for appellant.

Rupert B. Turnbull and Leonard J. Meyberg, both of Los Angeles, Cal., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

On July 5, 1939, Leonard J. Woodruff filed a voluntary petition in bankruptcy in the United States District Court for the Eastern District of Oklahoma predicating jurisdiction upon the proposition that his principal place of business during the preceding six months was in that district. The order of adjudication was made on the same day and P. M. Jackson, the appellant, was selected as trustee in bankruptcy in such proceeding.

On July 13, 1939, an involuntary petition in bankruptcy was filed against Leonard J. Woodruff in the United States District Court for the Southern District of California praying that he be adjudged a bankrupt and seeking the appointment of a receiver to conserve the assets of the bankrupt within the district. The court appointed E. A. Lynch, the appellee, as receiver in bankruptcy. Jurisdiction was predicated upon the ground that the alleged bankrupt had his domicile within said district for more than six months prior to filing petition and that for more than ten years his principal place of business had been located in said district. The petition was by a single creditor whose claim was for $278,631.71, evidenced by a judgment for that amount. It did not purport to be a petition for ancillary administra-

tion, although at the time of filing it the creditor knew that the alleged bankrupt had previously been adjudicated a bankrupt by the District Court for the Eastern District of Oklahoma and so informed the judge who appointed the receiver.

As it is not questioned that the receivership was necessary to conserve and protect the assets of the bankrupt within the Southern District of California, it is unnecessary to elaborate the subject further than to say that it involves, among other things, the possession and control of a large stock of merchandise.

In view of the pendency of these proceedings in Oklahoma and in California the trustee in bankruptcy appointed by the District Court for the Eastern District of Oklahoma, purporting to act under order No. 6 of general orders in bankruptcy promulgated January 16, 1939, effective February 13, 1939, invoked the authority of the Oklahoma court to determine whether or not it should make an order directing that all further proceedings be had before it and transferring to that court the bankruptcy proceedings pending before the United States District Court for the Southern District of California. The order applied for was made. A copy of this order was filed with the Clerk of the District Court for the Southern District of California and was brought to the attention of the court by the clerk. The court, by order, declined to make the order transmitting the record and proceedings until it had settled the accounts of the receiver and allowed compensation to him and his attorney. It further ordered that within five days the receiver and his attorneys file their report and petition for compensation. The trustee in bankruptcy appointed in the proceedings in the Eastern District of Oklahoma moved the court to revoke this order but it refused to do so and confirmed the previous ex parte order. D.C., 30 F.Supp. 17. From this order denying the trustee's motion this appeal was taken. In the meantime an appeal to the Circuit Court of Appeals for the Tenth Circuit had been taken from the order of the District Court of Oklahoma assuming jurisdiction over the California proceedings under the provisions of General Order in Bankruptcy No. 6.

It appears from statements made at the argument that the receiver has filed his accounts as required by the order and that the court has ordered the receiver to deliver the property in his possession to the

appellant not to be removed from the district until the account is settled and fees paid and that the trustee has agreed to the order subject to the determination of this appeal as to the jurisdiction of the court. The questions presented are therefore not entirely moot.

The appellant now contends that General Order in Bankruptcy No. 6, and the corresponding statute (11 U.S.C.A. § 55, Sec. 1, 52 Stat. 857) do not apply to the situation. He contends that upon the adjudication of bankruptcy in the District Court for the Eastern District of Oklahoma it immediately acquired exclusive jurisdiction over the bankruptcy proceedings and that the title to and right to possession of all the property of the bankrupt wherever located vested in him and that no district court of the United States in any other district had jurisdiction to entertain or consider a primary application for an adjudication of bankruptcy filed thereafter. If this were true it would follow that the District Court for the Southern District of California could make no valid order in the premises.

■ We do not agree with appellant's understanding of the law but think that the District Court for the Southern District of California does have jurisdiction by virtue of the primary petition addressed to it. Under the provisions of the Bankruptcy Act it may and frequently does happen that two or more courts have concurrent jurisdiction over bankruptcy proceedings against the same person. This act (52 Stat. 857, § 1, 11 U.S.C.A. § 55) provides that when petitions are filed in "different courts of bankruptcy each of which has jurisdiction", the cases shall, by order of the court first acquiring jurisdiction, be transferred to and consolidated in the court which can proceed with the same for the greater convenience of the parties in interest. The word "jurisdiction" is not always used in the same sense, as this section shows. The phrase "first acquiring jurisdiction" as used therein has been held to refer to the court in which a petition is first filed. In re Elmira Steel Co., D.C., 109 F. 456. But clearly, as the word is used in the phrase "courts * * * each of which has jurisdiction", it has a broader meaning and refers to the jurisdiction conferred by the act upon bankruptcy courts in general, without reference to the order of filing a petition or to priority of adjudication. In that sense jurisdiction was conferred upon the District

Court for the Southern District of California as well as upon the court in the Eastern District of Oklahoma. Acting thereunder each could exercise such power as might be necessary to carry out the purpose of the act. See, Babbitt v. Dutcher, 216 U.S. 102, 30 S.Ct. 372, 54 L.Ed. 402, 17 Ann.Cas. 969.

Until consolidation was ordered by the District Court for the Eastern District of Oklahoma, both of these courts had primary jurisdiction to entertain petitions in bankruptcy, appoint receivers, and do whatever was necessary to preserve the bankrupt's property. In the exercise of that jurisdiction the District Court for the Southern District of California appointed appellee as receiver, and his duties did not automatically cease upon the decision of the District Court for the Eastern District of Oklahoma to hear both cases. The Supreme Court has gone so far as to hold that where a territorial court, with no jurisdiction in bankruptcy, had appointed a receiver of certain property which had been attached and was in danger of destruction, and subsequently authorized its sale, that sale was valid, although the owner of the property had been adjudicated a bankrupt, without the knowledge of the territorial court, nearly three months before the sale. Jones v. Springer, 226 U.S. 148, 33 S.Ct. 64, 57 L.Ed. 161. If a court with no jurisdiction in bankruptcy could properly do all that was done by such a court in that case it is obvious that the District Court for the Southern District of California had power to do all that it did in this case when acting upon a petition in bankruptcy, notwithstanding a prior adjudication.

■ Assuming that, as has been shown, the District Court for the Southern District of California had jurisdiction to appoint the receiver and administer the estate until the District Court for the Eastern District of Oklahoma made its order determining the question of convenience and directing the transfer of the records in pursuance of General Order in Bankruptcy No. 6, the question is whether or not the trial court wrongfully retained jurisdiction over the accounts of the receiver until they should be settled and his compensation and that of his attorney finally determined.

If the question involved merely the settling of the receiver's accounts and fixing his fees and those of his attorney, we see no persuasive reason why that matter might not have been transferred to the District Court for the Eastern District of Oklahoma. Such a transfer would be analogous to that which occurs when the affairs of a bankrupt, previously in charge of an equity receiver appointed by a state or federal court, are taken over by a bankruptcy court in the exercise of its exclusive jurisdiction. That such a court may provide for compensating those who have taken care of the bankrupt's estate under the order of a court of competent jurisdiction is clear. Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215; Moore v. Scott, 9 Cir., 55 F.2d 863.

But the situation here is complicated by the fact that the District Court for the Southern District of California, acting in pursuance of its power as a federal court of bankruptcy, has taken possession of the property within its district which might have been lost or destroyed but for such action and might yet be lost or destroyed if left for a single day without a legal custodian.

Although the order of adjudication of the bankruptcy of Woodruff and the appointment of the trustee vested in the latter the title and right of possession of the property of the bankrupt wherever situated (Isaacs v. Hobbs Tie & T. Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645) the process of the District Court for the Eastern District of Oklahoma, acting under this section, could have no extraterritorial effect. Babbitt v. Dutcher, supra; In re J. & M. Schwartz, D.C., 204 F. 326; Orinoco Iron Co. v. Metzel, 6 Cir., 230 F. 40.

It follows that in order to secure control of the property of the bankrupt which was in the hands of the receiver appointed by the District Court for the Southern District of California, it was necessary for the trustee to obtain an order from that court directing its receiver to surrender the property to the trustee. As we construe the statute, such an order would be an exercise of ancillary jurisdiction in bankruptcy (11 U.S.C.A. § 11, sub. a(20), § 2, sub. a(20), Chandler Act). In exercising that ancillary jurisdiction we think it was proper for the court below to provide for payment to those who had cared for the bankrupt's property under its direction

before ordering its surrender to the trustee. See, 11 U.S.C.A. § 11, sub. a(20).[1]

It follows that the court below was right in retaining control of the bankrupt's property until the receiver's accounts were settled and provision made for his fees and those of his attorneys as an incident to the turnover of the property. The temporary retention of the papers was merely incidental to that order and it appears that the papers were shortly thereafter transmitted.

Order affirmed.

[1] 11 U.S.C.A. § 11, sub. a(20), is as follows: "(20) exercise ancillary jurisdiction over persons or property within their respective territorial limits in aid of a receiver or trustee appointed in any bankruptcy proceedings pending in any other court of bankruptcy."