Nott, J.,
delivered tbe opinion of tbe court:
Tbis is tbe first instance in tbe bistory of tbe court where proceedings have been instituted to punisb a witness for refusing to testify. It is a remarkable fact tbat in substantially every State and Territory tbe same deference bas been rendered to tbis distant tribunal tbat is ordinarily given to a court of tbe place where tbe witness lives. Inasmuch as tbe ordinary manner of taking testimony in tbis court differs from tbe ordinary manner of giving it in other tribunals and tbis difference affects both tbe practice and tbe rights of witnesses, it seems proper tbat tbe rules and principles which regulate and govern in such proceedings as the present be declared.
• Like tbe original jurisdiction of tbe Supreme Court, tbe jurisdiction of tbis court is not limited by local lines. Tbe courtroom and clerk’s office, like those of tbe Supreme Court, are placed by law in tbe city of Washington, but tbe jurisdiction extends everywhere within tbe national territory; and tbe implied powers of courts can doubtless be exercised by ordinary judicial methods anywhere within tbe theater of jurisdiction.
■ But, while tbe powers of tbe court extend equally to every part of its territorial jurisdiction, tbe law bas paid a proper *160 regard to the convenience of witnesses, and their convenience has become a right. In such a wide field of jurisdiction witnesses rarely reside in the vicinage of the place of trial, i. e., in the District of Columbia. When they reside or are found therein the testimony may be taken at the bar of the court, as in all courts, or before a commissioner. When they are at a distance, it must be taken by commission. But a commissioner is little more than a ministeral officer; he can not pass upon questions of evidence; he can not compel the attendance of witnesses; he can not punish for contempt; he can not inquire whether the process was irregularly issued. Such, generally stated,being the law and practice of the court, we pass to the facts of this case.
On the 8th September, 1891, the attorneys of seventeen claimants, who, being underwriters or the representatives of underwriters on one vessel, were united in one suit, procured an order for the issuance of a subpoena duces tecum, addressed to “Joseph Ogden, as administrator, with the will annexed, of the goods, chattels, and credits not yet administered, which were of John Ferrers, deceased, and to James Thomson, who appears in this case as attorney for said Ogden, requiring them to appear before one of the commissioners of this court in the city of New York, at a place in said' city to be named in said subpoena, on a day certain, and to bring before said commissioner all books, papers, documents, and records which have been preserved by said Ferrers and his representative relating to the insurance and underwriting done in his office by any of the parties herein named, and which shall in anywise bear upon their claims for spoliations by the French being prosecuted in this court, or which may be prosecuted under the act of January 20,1885, to be annexed by the commissioner to the deposition to be entitled in the above-stated case and to be returned to this court.”
The order for the issuing of a subpoena duces tecum is ex parte and ordinarily granted as of course. The court does not criti-cise such an order at the time; the person applying for it drafts it in his own form and takes it at his peril.
After procuring this order the claimants, or the commissioner on their behalf, on the 16th September, went before Mr. Justice Ingraham, of the Supreme Court of New York,‘and procured a subpoena duces tecum requiring the witnesses “to appear before *161 William Blalrie, a.commissioner of tbe Court of Claims in the city of New York, and to bring with them the papers named in the application of William E. Earle, of September 4, 1891, and all other documents, papers, and records relating to the losses and proofs of capture and condemnation of vessels and cargoes in which the jmrties named in the said application were or are interested.” This subpoena was issued under a statute of New York authorizing the courts of the State to assist in obtaining evidence for courts of foreign jurisdiction. Before the day named in it the witnesses went before Mr. Justice In-graham and procured an order requiring the claimants to show cause why it should not be vacated and set aside, and in the mean while staying all proceedings thereon. On the 24th this was argued, the judge withholding his decision until the 25th, when the motion of the witnesses was granted, and the subpoena vacated and- set aside.
This being the condition of affairs on the 24th September— that is to say, the subpoena issued by Mr. Justice Ingraham being still in force and his stay of proceedings still operative— the attorneys for the claimants obtained from this court a similiar subpoena duces tecum (under the order granted September 8), returnable before the same commissioner at 3 p. m. on the 25th. This subpoena was served two hours before the time when it was returnable. The witnesses went before the commissioner at the proper time, and stated that they declined to proceed upon several grounds, among which were that the shortness of the notice rendered it impossible for them to apply* to this court to quash the alleged order and subpoena (for which motion papers were then being prepared), and because the alleged order and subpoena appeared on their faceto have been made and obtained pending the litigation of the same subject-matter before a justice of the Supreme Court of New York, and because a stay of proceedings was pending in the proceeding taken by the claimants in that court.
The witnesses then hied their motion in this court on the 28th. The claimants did nothing until the 3d November, 3891, when, the witnesses7 motion still being pending and undecided, they instituted these proceedings for contempt. The two motions have been brought to a hearing at the same time.
On the argument, an objection was taken at the outset by the counsel for the claimants to the effect that witnesses in *162 a proceeding for contempt are bound to appear in person before tlie court.
Tlie rule wbicli requires tbe personal appearance of a party in contempt, like other rules, is to be enforced when it is properly applicable. But if witnesses in the most distant parts of the country — in Texas, in California — should be com pelled to appear in person at the bar of this court in the city of Washington, at their own cost of travel, whenever they are charged with contempt, and when the purpose of their coming is to show that no contempt was intended or committed, an unbearable inconvenience would be inflicted on persons who might be wholly without fault. In the present instance, Mr. Ogden is a gentleman advanced in years and Mr. Thomson a member of the bar. They were not subpoenaed to come before the court, but to attend before a commissioner. This they did. Disavowing an intent to commit a contempt, they raised, as every witness has a right to do, objections to the regularity of the process. The commissioner had not power to determine such questions, and they then did precisely what a witness so circumstanced should do, they immediately moved the court to vacate its order and set aside the writ. After that motion was made and until it was disposed of it remained rectus in curia. No subsequent proceeding for contempt, if it could bo begun (as to which the court expresses no opinion), could deprive the witnesses of their right to the unprejudiced ruling of the court upon their motion.
. It is undoubtedly the duty of a witness who denies the regularity or legality of a writ of subpoena to act diligently. Ordinarily it is his duty to move before the return day. But here the subpoena was served only two hours before it was returnable. In that condition of affairs the utmost that a witness could do would be to go before the commissioner and disavow an intent to treat the writ with contempt, and then immediately move to set it aside. Having done so, he will stand in the position of having moved in due time, i. e., before the writ was returnable, and until his motion is disposed of it is by no means clear that proceedings for contempt can be begun.
There is, moreover, another and very serious objection to be considered. This proceeding for contempt is based entirely upon the second subposna $ it is to punish the witnesses for not having obeyed that writ, which was issued on the 24th Sep *163 tember, when tbe first writ was still outstanding nnreturned and witb proceedings pending, and while tbe claimants were under a stay of proceedings and tbe witnesses in tbe custody of tbe State court. Concerning tbis practice two things must be said: In tbe first place, a second process of this nature can not issue after tbe first has been served and while it remains unexecuted and unreturned. When a party has taken out a writ and instituted proceedings upon it bis right to tbe assistance of tbe court is for tbe time exhausted, and a court will not allow a witness. tr¡._be harassed by two such proceedings for tbe same thing at the same time. In tbe second place, when tbe claimants took tbe order of tbis court into tbe State court and sought its assistance and procured its process and carried tbe witnesses into its jurisdiction, they were not entitled to ask for process in tbis court until tbe jurisdiction which they had invoked was exhausted. Tbis court bad for tbe time being lost jurisdiction of tbe witnesses, who were exclusively in tbe jurisdiction whither tbe claimants had carried them. Obtaining tbe second writ, disregardful of Mr. Justice Ingraham’s stay of proceedings and while be was bold-ing tbe matter under advisement was an evasion of bis order, and tbe writ, if not void, certainly was irregular and voidable. It was not a writ properly issued on which proceedings for contempt should be allowed.
At tbis point these proceedings might end, but tbe witnesses have raised an objection going to tbe substance of tbe order allowed on tbe 8th September, and, as that question may be brought before tbe court in a subsequent proceeding if not now disposed of, we proceed to its determination.
Tbe writ of subpoena duces tecum is regulated by tbe Be-vised Statutes, section 869. Tbe statutory requirements are clear, and not unlike those of common-law practice. Tbe section is in these words:
u Sec. 869. When either party in such suit applies to any judge of a United States, court in such district or Territory for a subpoena commanding tbe witness, therein to be named to appear and testify before said commissioner, at tbe time and place to be stated in the subpoena, and to bring witb him and produce to such commissioner any paper, or writing, or written instrument, or book, or other document, supposed to be in tbe possession or power of such witness, imd to be described in the subpoena., such judge, on being satisfied by tbe affidavit of tbe person applying, or otherwise, that there is reason to *164 believe tbat sucb paper, writing, written instrument, book, or other document is in the possession or power of the witness, and that the same, if produced, would be competent and material evidence for the party applying therefor, may order the clerk of said court to issue such, subpoma accordingly. And if the witness, after being served with such subpoena, fails to produce to the commissioner, at the time and place stated in the subpoena, any such paper, writing, written instrument, booh, or other document, being in his possession or power, and described in the subpoena, and such failure is proved to the satisfaction of said judge, he may proceed to enforce obedience to said process of subpoena, or punish the disobedience in like manner as any court of the United States may proceed in case of disobedience to like process issued by such court. When amp such paper, writing, written instrument, booh, or other document is produced to such commissioner, he shall, at the cost of the party requiring the same, cause to be made a correct copy thereof, or of so much thereof as shall be required by cither of the parties.” (§ 869.)
The duty of a witness under the writ, as regulated by the statute, is simply to bring a specified paper to a designated place. Under a writ ad testificandum a party can not make a man his lawyer, or physician, or scientific instructor by subpoenaing him as a witness and examining him as an expert. Under neither writ is he entitled to the judgment, discretion, opinion, or professional service of the witness. He can not compel him to go through a mass of papers and select those which in his (the witness’s) judgment relate to the subject of litigation 5 neither can he cast on the witness the responsibility of saying what papers do, and what papers do not, bear upon the issue to be tried. If a party litigant knows wha,t document he wants, and has reason to believe that it is in the possession of the witness, a court can assist him; but belief that there is valuable evidence stored in another man’s house does not give him a right to search his house, or open his safe, or ransack his papers. The only exception to this, if it can be called an exception, is where the evidence is in tho possession of the other party litigant, and there the remedy is by bill of discovery.
The order which was procured on the 8th of September requires the witnesses to bring before the commissioner u all the books, papers, documents, and records which have been preserved by the said Ferrers ” (of whom Mr. Ogden is the administrator) £- relating to the insurance and underwriting done in his office by any of the parties herein named, and which shall in *165 anywise bear wpon their claims for French spoliation, being prosecuted in this court or tohich map be prosecuted under the act of January 20, 1885, to be^annexed by the commissioner to a deposition in the above-stated case and returned to the court.” In a word the writ required the administrator to assort all the papers of an insurance office and select those which in his judgment 'ushall in anywise bear” upon either of the claims of the seventeen underwriters who procured the writ. This would involve not only judgment and discretion, but a study of the pleadings in the seventeen cases. Moreover, the writ not only requires this as to this suit in which the subpoena was issued, but goes to the length of requiring the witnesses to bring before the commissioner all books, papers, documents, and records which shall in anywise bear upon any other claims of the parties u which maybe prosecuted under the act of January 20,1885.” It is manifest that the witnesses were commanded to do that which was unreasonable, if not impossible; and we fully agree with Mr. Justice Ingraham that the writ should be vacated and set aside.
The ground assigned by the claimants as a reason for sustaining the writ is that the papers which are the subject of the writ were not the property of the insurance broker whom the witnesses represent, but that they “belonged to the people who were underwriters in his office,” now represented by the present claimants; and that the relation between the underwriters and the insurance broker was that of principal and agent. But these are precisely the reasons for which a court should exercise extreme caution in granting this summary process, which rests in its discretion, and.is not intended for the determination of legal rights.
■ The writ of subpoena duces tecum does not belong to a cestui que trust as against a trustee, nor to a principal as against an agent, nor to a party asserting a legal right to documents as against a party legally or illegally possessed of them. It is strictly the assistance of a court to a litigant as such, and is nothing more. It was devised for the protection of litigants who have no legal right to the possession of documentary evidence which can be maintained in a court of law or equity, and relates to the administration of justice and not to the rights of property. In the present case the claimants have procured the writ against the administrator of an estate as *166 such 5 tbey bave required bim to bring before tbe commissioner all tbe papers relating to tbe claimant’s insurance business of every kind and description, both as regards tbis suit and all suits based upon French spoliations; tbey bave also provided that tbe commissioner shall take all of these papers from tbe witnesses, and, instead of making copies of them, as directed by tbe statute, shall attach them to tbe deposition and send them to tbe court. As a ground for tbis tbey allege that tbe administrator has “no interest whatever in tbe papers, documents, and proofs,” “ but that tbey belonged to tbe people who were underwriters in tbe office of Ferrers,” which people are mrw represented by tbe claimants, their administrators. When all these things are brought together tbey indicate that tbe claimants are substantially turning tbis writ of subpoena into a writ of replevin, and are seeking by tbis summary method and in tbis collateral proceeding to obtain tbe possession or control of documents instead of pursuing their proper remedy in a court where tbe witnesses can assert their rights, if tbey bave any. If Mr. Ferrers and his family bave been charged with tbe care and custody of documents in which tbey bave bad “no interest whatever” for nearly a hundred years, it seems not unlikely that tbey bave acquired an equitable lien for expenses incurred or services rendered. Such questions between private parties are not within tbe jurisdiction of tbis court, and can not be determined on a return to a writ of tbis nature. Tbis court has no knowledge of tbe facts which seem to bave occasioned a controversy between tbe claimants and tbe witnesses, and if it bad, would express no opinion concerning them further than to say that where tbe moving party asserts a legal right to tbe possession of documents for which be has a proper remedy, tbe court will not allow tbe writ of subpoena duees tecum to be used to defeat, impair, or prejudice tbe rights of a witness.
Tbe order granted on tbe 8th September, 1891, directing that a writ of subpoena duees teeum issue requiring Joseph Ogden and James Thomson to appear before one of tbe commissioners of tbis court in tbe city of New York is revoked, and tbe subphoena issued on tbe 24th September, 1891, is vacated and set aside; and tbe motion of tbe claimant, filed tbe 3d November, 1891, requiring tbe above-named witnesses to show cause why tbey should not be attached for contempt in not obeying tbe said writ of subpoena duces teeum, is overruled.