Howey, J.,
delivered the opinion of the court:
Plaintiff contracted with the United States for a consideration exceeding $1,000,000 to furnish all labor and materials and perform all work required for the interior finish of a new customhouse at New York City, with the stipulation that the work provided for in the contract should be completed on or before October 15, 1906. The pleadings show that certain work deemed desirable was not done under the contract by reason of lack of funds, but subsequently, and before the time for completion of the contract, appropriations were made by Congress and plaintiff was peremptorily ordered by defendants, on or about October 22, 1906, to furnish the labor and materials and perform all the work required for restoring to the interior finish of the building certain .items omitted therefrom under the original contract, though embraced in the original proposals. Defendants notified plaintiff that they would allow him an additional sum in excess of $200,000 for the work of restoration, which by order was fixed by the United States to be June 1, 1907. The contractor alleges that he was never *456 requested to, and in fact never did, assent to the modifications and changes whereby certain work was omitted and which involved him in other undertakings, but that he had no alternative but to submit to what he alleges to have been the arbitrary act of the Government. The contractor is undertaking to show that he faithfully endeavored to complete the contract, which, he says, was arbitrarily fixed by the Secretary of the Treasury under the supplemental order, but that he was prevented therefrom by acts of the Government and its agents.
It is further alleged by the contractor that he faithfully prosecuted the work provided for in the contract as originally executed, and also the work provided for “ in the supplemental or second contract ”; that he performed extra work and furnished extra material not provided for in either one of the contracts, for which he was partly compensated. He further says that the extra work and material were accepted and used; that defendants formally accepted the customhouse; that after acceptance of the building he demanded payment in full, but his demand was refused; that defendants unlawfully deducted $50,820 as and for liquidated damages or penalty, on the ground claimed by them that they could lawfully do so under the terms of the contract.
For damages on account of alleged delays caused by the Government; for unlawful deductions and retention of moneys on account of alleged omissions and defects in the work; for extra costs and expenses due to stated arbitrary rejection of certain work, labor, and materials; and for the extra work and materials ordered and accepted by the Government, but not paid for, in addition to the sums stated in the preceding paragraph retained as and for liquidated damages and penalties, the plaintiff contractor brings this action to recover the sum of $123,441.37.
The matter now before the court arises on the motion of the plaintiff for the order of the court to issue its call on the Secretary of the Treasury for true and certified copies of certain documentary evidence described in the motion and alleged to be among the official files of the Government.
*457 The documentary evidence called for consists of alleged letters to and from the Treasury Department relating to bids of the several contractors for the interior finish of the building under construction; reports and letters relating to the condition of the work and bearing upon the question of the delays for which the contractor was penalized; recommendations respecting deductions under the contract and the causes therefor; correspondence with reference to progress under the eight-day notice relative to expediting completion of the mechanical equipment and the installation of furniture; correspondence relating to the right of the Government to assess liquidated damages at $400 a day because of orders from defendants stopping the contractor from work on important parts of the same under his contract, and likewise relating to the delays which other contractors imposed upon plaintiff in his own undertaking. Besides which, the call embraces correspondence in reference to the withholding of payments, and the mode and manner of carrying on the work, and recommendations of allowances to plaintiff by those best in position to know; letters relating to allowances by the architect to the contractor for extras; information respecting the suspension of trim wood; instructions wherein the architect was required to keep a report of delays incident to suspensions of the work where the contractor had been ordered to suspend; reports and letters in reference to settlements with and in the matter of time penalties against other contractors on the general contract for the superstructure of the building and against other contractors for mechanical equipment, and as to whether any other contractors were penalized for delays which in turn delayed this plaintiff ; for daily audited cost reports and itemization of work performed in expenditure of those amounts retained from the contractor and alleged to have been expended by defendants in replacing defective work after the work of this contractor had been accepted; and, finally, the estimates of the architects submitted within certain dates to the Secretary of the Treasury with a view to obtaining from Congress appropriations for changes and new construction in the building.
*458 Defendants do not object to some parts of the proposed call, because the court has previously allowed similar requests over the objection of the United States. It is said, however, that plaintiff is merely fishing for evidence now, and that many of the letters and reports are only supposed by the plaintiff to be relevant and material. There are other objections for want of more specific dates and because certain of the documents called for are said to be so inadequately described as to call for an unreasonable expenditure of time and labor.
This court has power to call upon any of the departments for information or papers deemed necessary in the prosecution or defense of cases against the Government, under the provisions of section 1016 of the Eevised Statutes, but with the qualification that the head of any department may refuse to comply when, in his opinion, such compliance will be injurious to the public interest. Some of these calls are mere bills of discovery. These arise in cases where the parties do not specify or know what they want, while some requests are general in their nature and throw the responsibility of selecting documentary evidence upon the clerks of the departments. Some are for copies of papers presumably in claimant’s possession. These kinds of calls are not proper, because the matter can not be turned into a bill of discovery. Elting's case, 27 C. Cls. R., 158.
A call under the statute is in the nature of a subpoena duces tecum and is an absolutely indispensable writ to the administration of justice. Hale v. Henkel, 201 U. S., 43. It is in suits against the Government not unlike the writ of duces tecum used against the officer of a corporation having the books and papers of a company in his custody. Where the question of criminality is not involved, the officer of a corporation having such custody is bound to produce papers in obedience to the writ. Wertheim v. Continental Ry. & Trust Co., 15 Fed., 718. It is necessary and vital to the rights of litigants against the Government as well as against corporations that calls for papers be respected, and considerations of inconvenience must give way to the paramount rights of parties.
*459 The rule acted upon by this court where copies of the record are desired is well established. The call must appear with sufficient particularity to enable an intelligent clerk in the ordinary discharge of his duties to find the record, and copy it. The responsibility of determining what is relevant, or of finding documentary matter specifically called for can not be thrown on the officers of a department. The evidence called for must appear on the face of the call to be relevant, material, and competent. Woolverton’s case, 26 C. Cls. R., 215.
The question now before the court is whether or not the claimant’s call is within the rule. In determining this it is proper to advert to some of the other authorities.
In Bloede Co. v. Bancroft, 98 Fed., 175, the court held: “ Generality in designation of books or writings is not objectionable if the subject matter to which they relate is specifically mentioned in the motion and notice.”
In Vasse v. Mifflin, 4 Wash. C. C., 519, the court held that a notice to “ produce all letters, books, and papers in defendant’s possession relating to moneys received by him under the award of the commissioners acting under the Florida treaty ” was sufficiently specific if the letters called for were described by their subject matter, which the plaintiff might not have the means of describing by their dates.
In United States v. Babcock, 3 Dill., 556, the court held that “ The papers are required to be specified only with that degree of certainty which is practicable, considering all the circumstances of the case, so that the witness may be able to know what is wanted of him and to have the papers on the trial.”
An examination of the motion for the call shows sufficient compliance with the rules stated except as to a few of the specified matters; and there may be some doubt respecting the competency of some of the matters specified, but it is impossible for the court without an examination of the correspondence to determine the admissibility of some of the matters described. Among the matters called for which seem to be immaterial and inadequate is the alleged letter of June or July, 1905, “rebuking Gilbert.” The contents *460 of that letter are probably a matter of opinion. If not, and if the rebuke administered to the architect related to this contractor’s work to his injury, the fact must be charged. Again, that portion of paragraph 7 which describes letters which occasioned the department’s instructions in reference to plastering seems to be unreasonable. Finally, the reports called for in paragraph 11 seem to be covered by a previous call asking for an itemized statement of the expenditure of the sum of $12,000 and has already been met.
On the other hand, the matter set forth in paragraph 10, which calls for correspondence between the Treasury Department and its agents with relation to other contracts, is not obviously incompetent and irrelevant, because if contractors who were doing outside work were penalized for delays the correspondence would tend to prove the allegations of the present contractor, who was doing inside work, that he was obliged to wait on others. Again, if it be shown that the architect under whom this plaintiff was obliged to carry on the work was arbitrary and was actuated from motives of prejudice and bias in penalizing the claimant and in rejecting materials long in place; and if it be shown that this architect refused just allowances for work as the same progressed, such testimony, if on file, would be clearly admissible. The letters and reports made by the superintendent of the building to the Supervising Architect appear to be relevant, because they are the best evidence relating to the condition of the work, and such letters and reports may show that the delays for which plaintiff was penalized were in part caused by delays in the matter of mechanical equipment for other parts of the building on which plaintiff had to wait to complete his contract. Any official correspondence tending to show that defendants stopped the construction of important parts of the work unjustly, from which the contractor suffered damage, ought to be supplied. Certainly where fraudulent conduct is charged in the ordering of extra work to be performed by the contractor below cost, and, likewise, where it appears that the United States had introduced orders predicated on some of the correspondence now called for, such letters would not only be competent but *461 necessary to put the court in possession of all the facts. We have already shown that the contractor was charged $400 a day. This was for a period of 121 days. Plaintiff insists that he had improper orders exceeding this time, compelling corresponding delay and suspension by him of work on important parts of his contract. This is an important matter in determining the alleged causes of the various delays. Especially is it material to determine where and to whom the faults were chargeable because of the allegation that the occupancy of the building was caused by delays in other work upon which this contractor had to depend to begin or finish the interior work.
It may put the clerical force of the Supervising Architect’s Office to some inconvenience to go through the files and procure the correspondence and reports called for, but we think the dates are sufficiently explicit to sustain the call, except as to the matter hereinbefore stated. The motion for the call, with the exceptions noted, is allowed.