**KAMEN SOAP PRODUCTS CO., Inc. v. UNITED STATES.**

No. 49543.

United States Court of Claims.

Decided March 3, 1953.

Alexander B. Hawes, Washington, D. C. (Marx, Leva and A. Lloyd Symington, Washington, D. C., on the brief), for plaintiff.

S. R. Gamer, Washington, D. C., Warren E. Burger, Asst. Atty. Gen. (Mary K. Fagan, Washington, D. C., on the brief), for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This action is presently before the court on defendant's motions to quash certain subpoenas duces tecum issued on behalf of the plaintiff and served on the Attorney General, James P. McGranery, the Secretary of the Army, Frank Pace, the Comptroller General, Lindsay C. Warren, and the Administrator of the Reconstruction Finance Corporation, Harry A. McDonald.

The petition in this action was filed on March 13, 1950, stating a claim for damages for breach of a contract for the sale and delivery of soap by the plaintiff to the Government. The petition alleges that plaintiff sought to accelerate deliveries of soap under its contract, but that the Army refused to accept such deliveries, and so delayed such deliveries that plaintiff sustained substantial damages.

On November 28, 1951, defendant filed a special plea in fraud to which plaintiff replied on February 29, 1952. A trial limited to the issues raised by the plea in fraud was held in New York City from September 29 to October 2, 1952. On the last day of those hearings counsel for plaintiff withdrew. The hearings were then postponed to November 5, 1952, in Washington, D. C., in order to enable plaintiff to secure other counsel. Plaintiff employed its present counsel on October 29, 1952, but because of other litigation they were unable to continue with the instant case until November 10,

1952. On November 18 the resumption of the hearings was scheduled for December 15, 1952. Those hearings, except for the evidence sought under the subpoenas, were concluded on December 22, 1952.

Plaintiff first sought to obtain the documents called for under the subpoenas by requesting counsel for the Government to supply them on a voluntary basis. The request was made on December 2, 1952, and on December 4 plaintiff's counsel learned that the documents would not be made available from the source. At that time it was apparent that the documents could not be obtained through a motion for call in sufficient time for use at the hearing beginning December 15, 1952.

After being unable to obtain the documents sought, plaintiff on December 5, 1952, had subpoenas duces tecum issued under Rule 44, Rules of Court of Claims, 28 U.S. C., and served on the officials named above, with the exception of the Administrator of the RFC, who was served with a subpoena duces tecum on December 10, 1952. These subpoenas duces tecum commanded the appearance of the persons named therein before Commissioner Wilson Cowen and directed such persons to bring with them certain designated documents. On December 12 and 15, 1952, defendant filed motions to quash these subpoenas.

Since the motions to quash could not well be passed on by the court in time to have the matter decided before the scheduled date of the hearings (December 15, 1952), the parties were advised by the commissioner of the court that the officials summoned would be excused from attending the trial, and all parties agreed that the introduction of the testimony to be obtained through the four subpoenas would be deferred until the court ruled on the motion to quash.

The motions to quash have been fully argued and briefed and are herein under consideration.

Defendant has contended in support of its motion to quash first, that the Court of Claims does not have the authority to issue a subpoena duces tecum against an officer or employee of the United States Government to compel the production of documents or

papers in the possession or control of the Government; that even if such authority exists the court should not in its discretion issue such subpoenas *duces tecum* against the Government; and finally that the particular documents sought by these subpoenas bear no possible relevance or materiality to the issues of the case.

The vigor with which defendant's contentions have been presented both heretofore and in the instant case, and their importance to the effective exercise of the jurisdiction of this court require extended consideration of the issues raised.

The writ of subpoena *duces tecum* has been considered indispensable to the administration of justice.[1] With respect to the general obligation to testify, it has been stated:

> "This testimonial duty to attend and disclose all that is desired for the ascertainment of truth applies to every form and material of evidence whatever. In particular it applies to such evidential material as exists in a person's hands in the form of documents. 'There is no difference in principle,' said a great judge [Shaw, C. J., in Bull v. Loveland, 10 Pick., Mass., 9, 14], 'between compelling a witness to produce a document in his possession, under a subpoena *duces tecum* (in a case where the party calling the witness has a right to the use of such document), and compelling him to give testimony when the facts lie in his own knowledge.' [IV Wigmore on Evidence, § 2193 (1905)].
>
> *"So, too, the process for documents will be implied wherever testimonial compulsion in general is predicated by a statute."* [Italics ours.] [Ib. id., n. 3,

citing Mitchell's Case, 12 Abb.Prac. 249, 262, and United States v. Tilden, Fed.Cas.No. 16,522, 10 Ben. 566, 578].

In addition, it may be among those powers implied from the very creation of this court by the act of Congress.[2] Quite apart from the matter of implied powers of the court, however, there is abundant authority for the exercise of such power clearly expressed in the several statutes applicable to this court, specifically sections 1651, 2071, 2503, and 2507 of Title 28 United States Code.

■ There is no assertion by defendant here that documents in its possession are immune from subpoena *duces tecum* solely by reason of the fact that defendant is the United States Government. The sovereign immunity of the Government from suit was waived in the very acts of Congress establishing this court and conferring upon it jurisdiction to determine claims against the Government. Nor has there been any assertion on behalf of the defendant of privilege against disclosure of the documents sought by the subpoenas in question. Cf. U. S. ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417. Nor in addition does the defendant contend that the court is without authority to order production of documents in possession of the defendant.

It is the defendant's contention, however, that the court is without authority to obtain such documents *by subpoena duces tecum.*

Defendant's argument is based upon the operation of section 2507, Title 28 United States Code. Defendant states that section 2507 is the exclusive source of the authority of the court to obtain government documents, that section 2507 does not authorize the issuance of subpoenas *duces tecum,* and

---

[1]. Hale v. Henkel, 201 U.S. 43, 73, 26 S. Ct. 370, 50 L.Ed. 652; Wilson v. United States, 221 U.S. 361, 373, 31 S.Ct. 538, 55 L.Ed. 771. See also Amey v. Long, 9 East 473, 479: "The right to resort to means competent to compel the production of written, as well as oral, testimony seems essential to the very existence and constitution of a Court of common law, which receives and acts upon both descriptions of evidence, and could

not possibly proceed with due effect without them." (Ellenborough, L. C. J.)

[2]. See Reviser's Notes to Title 28 United States Code, section 1651: "The revised section extends the power to issue writs in aid of jurisdiction, to all courts established by Act of Congress, *thus making explicit the right to exercise powers implied from the creation of such courts."* [Italics ours.]

that therefore the subpoenas in question should be quashed.

Sections 2503 and 2507, Title 28 United States Code, provide in part as follows:

"§ 2503. Proceedings before commissioners generally

"Parties to any suit in the Court of Claims may appear before a commissioner in person or by attorney, produce evidence and examine witnesses. Commissioners, including reporter-commissioners taking testimony, may administer oaths or affirmations to witnesses. Subpoenas requiring the attendance of witnesses before commissioners may be issued by the court and compliance therewith shall be compelled under appropriate rules and orders of the court. Subpoenas for witnesses or for the production of testimony may issue out of the court by the clerk and shall be served by the United States marshal to whom they are directed.

\* \* \* \* \* \*

"§ 2507. Calls on departments for information

"The Court of Claims may call upon any department or agency of the United States for any information or papers it deems necessary, and may use all recorded and printed reports made by the committees of the Senate or House of Representatives.

"The head of any department or agency may refuse to comply when, in his opinion, compliance will be injurious to the public interest."

As we understand the Government's argument, it does not contend that on its face section 2503 does not authorize the issuance of subpoenas *duces tecum,* or that in scope such section does not apply to the Government as far as subpoenas *ad testificandum* are concerned. It is the Government's contention that Congress intended section 2507 to be the exclusive source of authority for the production of government records, and that therefore section 2503 cannot be construed in accordance with its otherwise plain meaning, i. e., that both subpoenas *ad testificandum* and subpoenas *duces tecum* are available not only against private persons but also against officers and employees of the Government. The defendant asserts that plaintiff must of necessity proceed by motion for call under Rule 26(b).[3]

Under the defendant's argument subpoenas *ad testificandum* would be available to require the oral testimony of both private persons and government officials and employees, but subpoenas *duces tecum,* while available to the Government to obtain documents, i. e., written testimony, would not be available to private suitors for the production of government documents.

Such an anomalous and discriminatory result would collide with the avowed purpose underlying the establishment of this court to provide an orderly and expeditious method for the disposition of claims against the Government and the accompanying broad waiver by Congress of sovereign immunity against suit. We can but conclude that if it were intended to exempt the Government, which is defendant in every action in this court, from the subpoena process for the production of documents such intention would have been clearly manifested in the statutes. The instant case presents an example wherein the use of subpoenas *duces tecum* for the production of government documents is both necessary and appropriate. It cannot be assumed that Congress failed in such substantial manner to pro-

3. "Rule 26. Calls on government departments or agencies

\* \* \* \* \* \*

"(b) Motion by Plaintiffs. A motion for call may be filed by plaintiff at any time after the expiration of the time within which defendant is required to file its answer, except that plaintiff may file such a motion at any time after the filing of the petition in the circumstances provided for in Rule 13.

"Every such motion shall show with reasonable particularity (1) the papers, documents, or information desired; (2) what is sought to be pleaded or proved thereby; and (3) how or in what respect they are relevant and material to the issues of the case. Such motion shall also state that such papers, documents, and information are not in possession of plaintiff. \* \* \*"

vide the means whereby its policies might be effectuated.

The pertinent provisions of section 2503 are a consolidation of sections 269 and 276, 28 U.S.C. (1946 ed.), and had their origin in section 3 of the act of February 24, 1855, 10 Stat. 612, and the act of February 24, 1925, 43 Stat. 964. Section 11 of the act of February 24, 1855, was the forerunner of section 2507. Sections 3 and 11 of the 1855 act were in part as follows:

> "An Act to establish a Court for the Investigation of Claims against the United States.
>
> * * * * * *
>
> "Sec. 3. * * * the said court shall have authority to establish rules and regulations for its government; * * * to issue commissions for the taking of such testimony, whether the same shall be taken at the instance of the claimant, or of the United States, and also to issue subpoenas to require the attendance of witnesses in order to be examined before such commissioners; which subpoenas shall have the same force, as if issued from a district court of the United States, and compliance therewith shall be compelled under such rules and orders as the court hereby created shall establish. * * *
>
> * * * * * *
>
> "Sec. 11. * * * That said court shall have power to call upon any of the departments for any information or papers it may deem necessary, and have the use of all recorded and printed reports made by the committees of each house, when deemed to be necessary in the prosecution of the duties assigned by this act.[4] * * * [omitted portion referred to appointment and salaries of clerks and messenger] *Provided,* That the head of no department shall answer any call for information or papers if, in his opinion, it would be injurious to the public interest."

We think the 1855 act clearly evidenced the recognition by Congress of power in the court thereby established to issue subpoenas *duces tecum* requiring the production of government documents. Such power was analogous to that of the district courts of the United States, and as far as the taking of testimony by a commissioner of the court was concerned, was regulated by the same provisions applicable to similar practice in the district courts. Elting, Adm'r v. United States, 27 Ct.Cl. 158.

Prior to the creation in 1855 of the Court of Claims, the Congress had enacted provision whereby "any judge of a court of the United States,"[5] upon application of either of the parties, might order the issuance of a subpoena *duces tecum* for the production of documents before a commissioner appointed to take testimony. Act of January 24, 1827, § 2, 4 Stat. 199, Rev.Stat. § 869. Section 3 of the 1855 act expressly authorized the Court of Claims to issue commissions for the taking of testimony, "whether the same shall be taken at the instance of the claimant, or of the United States". It also expressly recognized the authority of the Court of Claims "to issue subpoenas[6] to require the attendance of

4. Cf. the duty of the Attorney General to "call" on departments, bureaus, and officers of the Government for "all facts, circumstances, and evidence touching" pending claims. Section 6 of the Act of June 25, 1868, 15 Stat. 76.

5. That the Court of Claims was intended to be included by the usage of the phrase "courts of the United States" where the context permitted, see section 2 of the act of March 2, 1867, 14 Stat. 457, expressly stating that section 3 of the act of July 2, 1864, 13 Stat. 351 (applicable to "the courts of the United States"), "shall be construed to embrace all suits to which the United States shall be a

party in the court of claims, either plaintiff or defendant." The proviso to section 3 of the act of July 2, 1864, provided that no witness in the courts of the United States should be excluded in a civil action because he was a party to, or interested in, the issue tried. See Macauley's Case, 11 Ct.Cl. 575, for the early history on the right of a claimant to testify in support of his claim in this court.

In Title 28, United States Code, section 451, "court of the United States" is expressly defined to include the Court of Claims.

6. The act of January 24, 1827, differentiated between subpoenas *ad testifican-*

witnesses in order to be examined before such commissioners." There is no indication in the 1855 act that officers or employees of the United States were to be immune from the service of subpoenas, or that use of the term "subpoenas" did not contemplate subpoenas *duces tecum* as well as *ad testificandum*.[7] Inasmuch as the purpose of the subpoena was to require the attendance of witnesses in order to be examined before the commissioners, it would seem that any limitations upon persons to be subject to the subpoena power, and any limitation upon the usual incidents of that power (i. e., that witnesses under subpoena might also be required to bring with them designated documents),[8] would have been clearly stated. Further, the provision that subpoenas "shall have the same force, as if issued from a district court of the United States," indicates that the framers of section 3 had knowledge of the act of January 24, 1827, and of the district court process. It is reasonable again to assume that in describing similar power in the Court of Claims any limitations thereon applicable only to this court would have been declared in unmistakable terms. Yet the 1855 act will be searched in vain for any such limitations.

Nor are we able to construe section 11 of the 1855 act, as reenacted in section 2507 of the new Title 28, as interposing any obstacle to the exercise of the power of the court under section 3 of that act, and under the act of January 24, 1827, to issue subpoenas *duces tecum*. Cf. American Lithographic Co. v. Werckmeister, 221 U.S. 603, 610, 31 S.Ct. 676, 55 L.Ed. 873. The specific inclusion of the subpoena provisions in section 3 and in the act of January 24, 1827 (of which we cannot presume Congress was unaware when it passed the 1855 act), deny in its inception the suggestion that section 11 was intended to be the exclusive authority for production of government documents.[9]

For its contention that the call provisions, section 11 of the 1855 act and section 2507 of the new Title 28, were and are exclusive, defendant relies upon the proposition stated in Botany Worsted Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379, that "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." This proposition is a tentative rule of construction and must give way to specific evidence of Congressional intent to the contrary.

It can offer no support to defendant's position here. Section 11 was not enacted subsequently to section 3 in the 1855 act, but concurrently. Section 11 is in many respects more general in scope than section 3

---

*dum* and *duces tecum*, providing that the former might issue upon application to the clerk, while application for the latter was to be made to a judge of the court concerned. Section 3 of the 1855 act creating the Court of Claims made no such differentiation, but referred generally to "subpoenas."

7. A subpoena *duces tecum* is "that kind of *subpoena* by which a witness is commanded to *bring with him* certain documents or writings specified." Burrill's Law Dict., p. 491.

8. See III Bl.Com. 382, that books and papers "can generally be obtained by rule of court, or by adding a clause of requisition to the writ of *subpoena*, which is then called a *subpoena duces tecum*."

9. In both American Lithographic Co. v. Werckmeister, 221 U.S. 603, 31 S.Ct. 676, 55 L.Ed. 873, and Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675,

95 L.Ed. 879, exercise of the power of subpoena *duces tecum* was upheld over arguments that other provisions were exclusive in operation.

In the former case it was held that § 724 of the Revised Statutes, enacted to provide a substitute for a bill of discovery during the actual trial phase of a lawsuit, see Carpenter v. Winn, 221 U.S. 533, 31 S.Ct. 683, 5 L.Ed. 842, 18 U.S.C., was not exclusive in operation to the extent of precluding exercise of the general power of subpoena *duces tecum*.

In the Bowman Dairy case, under the Federal Rules of Criminal Procedure, it was held that Rule 16, which was adapted for discovery purposes, was not intended to circumscribe operation of the subpoena *duces tecum* process under Rule 17. The language of Rule 17 of the Federal Rules of Criminal Procedure was substantially the same as the subpoena rule of this court under which the subpoenas in question were issued. The sub-

and can hardly be said to limit the power of subpoena specifically declared in section 3. There is for that matter no mention of subpoena in section 11. Section 3 is concerned with the examination of witnesses *at the instance of the parties.* Section 11 was not so limited but stated generally merely the right of the court itself to call for assistance from the executive departments by way of information or papers and Congressional reports. The objective of Congress in establishing the court of relieving itself of the necessity of considering multiple private relief bills is perhaps significant. Thus the court was granted not merely the usual powers of subpoena at the instance of the parties under section 3 but also the more general right to call for all available information in possession of the Government, subject to the privilege limitation,[10] in order that the court might have the same broad sources of information as had Congress itself. The court has exercised this power both on motion of the plaintiffs and on its own motion.[11] It has also provided for use of subpoena *duces tecum* on motion of the parties under Rule 44(b).

Further indication of the more limited scope of section 3, and therefore indication of the inapplicability of the Botany Mills rule to this case, is the fact that section 3

was limited in subject to proceedings before the commissioners of the court, while section 11 was not so limited. Thus it can hardly be said, as defendant contends, that section 11 was a "specific provision overriding a general provision on the same subject matter."

It must be concluded that even under the 1855 act Congress recognized that the Court of Claims had the power of subpoena *duces tecum* and that such writ was available for the production of documents in the possession or control of the Government.[12] The pertinent provisions of the 1855 act have been carried forward to the present sections 2503 and 2507, and the same conclusion, of course, is still warranted.[13] Nor can we by any means agree with defendant that our construction of section 2503 renders section 2507 devoid of meaning.

Any subsisting doubt as to the extent or applicability of the subpoena authority of the court should have been dispelled by the act of February 24, 1925, 43 Stat. 964, providing in part:

"* * * Subpoenas for witnesses *or for the production of testimony* before the commissioner may issue out of the court [of claims] by the clerk thereof and shall be served by a United

---

poena *duces tecum* involved in the Bowman Dairy case was issued for the production of documents in possession of the Government.

10. Section 2507 also sets to rest any question of privilege for government documents possibly arising out of the mere fact such documents are in the hands of the sovereign. The privilege thereunder provided is explicit in its terms.

11. The authority of the call provisions, section 11 of the 1855 act, as carried forward into section 2507, Title 28 United States Code, *inter alia*, has been drawn upon by the Court of Claims to provide a pretrial discovery practice, under the limitations imposed by the court in Rules 26 and 27.

12. Apropos of the Government's argument, it is interesting to note the argument advanced and rejected in Amey v. Long, supra: "The writ of subpoena *duces tecum* only lay to public officers for the production of the public documents in

their custody, in which all persons had or might have an interest, and could not properly be extended to private persons." [Quoted in IV Wigmore on Evidence, § 2193 (1905)]. The court held the writ was not limited to public officers, etc. In the instant case the argument is not that the writ is limited to public officers, but that it may lie to all persons *except* public officers!

13. The material portions of section 3 of the 1855 act were incorporated in substance successively in section 1082 of the Revised Statutes of 1878, section 168 of the Judicial Code of 1911, 36 Stat. 1140, 28 U.S.C. § 276, and finally the present provision, section 2503 of Title 28 United States Code.

The call provisions of section 11 of the 1855 act were subsequently incorporated into Rev.Stat. § 1076, section 164 of the Judicial Code of 1911, 36 Stat. 1140, 28 U.S.C. § 272; and the present provision, section 2507, Title 28.

States marshal in any judicial district to [14] whom they are directed. * * *" [Italics ours.]

If the phrase "Subpoenas for witnesses" did not embrace subpoenas for the production of documents upon which examination might be conducted, then such subpoenas must have been contemplated by the addition of the langauge "for the production of testimony", i. e., written or documentary testimony. Any other construction would render such language meaningless. Again, failure of Congress to express any limitation of the character here asserted upon the power of subpoena *duces tecum* strengthens the conclusion that none was ever intended or contemplated.

It was this act of February 24, 1925, 28 U.S.C. § 269, together with the provisions first enacted as section 3 of the 1855 act, which formed the basis of the consolidated section 2503, of current application.

Quite apart from section 2503, however, we believe there is ample statutory authority for the production of government documents by subpoena *duces tecum*. Section 1651(a), Title 28 United States Code, provides:

"§ 1651. Writs

"(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

This section is applicable to the Court of Claims, since this court is one "established by Act of Congress". That a writ of subpoena *duces tecum* may be "necessary or appropriate" in aid of the jurisdiction of this court, and that its issuance would be "agreeable to the usages and principles of law" cannot be questioned. Here then is a statute in the broadest and most positive terms setting forth the authority of the Court of Claims to issue compulsory process.

In American Lithographic Co. v. Werckmeister, supra, the Supreme Court held that section 14 of the Judiciary Act of 1789, Rev.Stat. § 716, conferred upon the Federal courts the authority to issue subpoenas *duces tecum*. That section, while not then applicable to the Court of Claims, contained the original provisions upon which was based section 1651, clearly applicable to the Court of Claims. It is likely that the Court of Claims, prior to the enactment of Title 28 in 1948 had authority under section 4 of the act of March 3, 1863, 12 Stat. 765, coextensive with that of the other Federal courts under section 14 of the Judiciary Act of 1789, supra. Section 4 of the act of March 3, 1863, expressly stated that the Court of Claims "may generally exercise such powers as are necessary to carry out the powers herein granted to it." [15] Thus it is very probable that such section itself recognized the authority of this court to exercise the power of subpoena *duces tecum* against government officials and employees. However, there can be no doubt whatsoever that such power was contemplated under section 1651, when the power therein stated, already having been held by the Supreme Court in the Werckmeister case to include the power of subpoena *duces*

---

14. The act of February 24, 1925, provided also that the commissioner of this court appointed under that act "may have and perform the general duties that pertain to special masters in suits in equity." Senate Report 922, 68th Cong. 2d Sess., accompanying S. 3793, 68th Cong. 2d Sess., which became the act of February 24, 1925, stated that the commissioners "shall have and perform, in general, the same duties and *powers* as pertain to special masters in chancery." [Italics ours.] Accord H.Rep. 1448, 68th Cong. 2d Sess.

As to the general powers of a special master, see Rule 53(c), Federal Rules of Civil Procedure, 28 U.S.C.: "He may require the production before him of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto."

15. Cf. United States v. Borcherling, 185 U.S. 223, 234, 22 S.Ct. 607, 612, 46 L. Ed. 884: "The jurisdiction of [the Court of Claims] extends throughout the United States. It issues writs to every part of the United States, and is specially authorized to enforce them. 10 Stat. 612, c. 122, § 3. * * *"

*tecum,* was expressly extended to "all courts established by Act of Congress".[16]

The extent of the authority conferred under section 1651 is further indicated in Bethlehem Shipbuilding Corp. v. National Labor Relations Board, 1 Cir., 1941, 120 F.2d 126, 127.[17] The court had issued a decree enforcing an order of the NLRB. On a petition for an order to show cause why the Bethelehem Shipbuilding Corporation should not be adjudged in contempt the Board moved that the court issue, *inter alia,* an order and subpoenas requiring certain persons "to produce at a designated time and place for the purpose of pre-trial discovery, inspection, copying or photographing, certain described books, records and documents". The court noted that while the Federal Rules of Civil Procedure did not themselves apply to the circuit courts of appeals, the motion in effect requested "the privilege of pre-trial discovery of the sort which has now become common and familiar usage in the district courts under the provisions of Rule 26 and Rule 45, Federal Rules of Civil Procedure". The court affirmed its power under 28 U.S.C. § 377 (immediate predecessor of section 1651, Title 28, United States Code), to issue subpoenas *ad testificandum* and *duces tecum for the purposes of pre-trial discovery,* stating:

> "Such writs which are appropriate to the exercise of the jurisdiction of the district courts, and now accepted usage therein as provided in Rules 26 and 45, F.R.C.P., may, by analogy, be equally appropriate to the exercise of the jurisdiction of a circuit court of appeals in a proceeding like the one now pending before us." 120 F.2d at page 127.

Because of the nearness of the date of the hearing, which had already been scheduled, and because of the limited nature of the issues, however, the court in its discretion denied the motion in the terms requested, and in lieu thereof directed the issuance of subpoenas *duces tecum* for the production of the documents sought at the hearing date instead of pre-trial. The opinion and holding in the Bethlehem Shipbuilding case are significant inasmuch as the authority of the Court of Claims under section 1651 is coextensive with that recognized in 28 U.S.C. § 377, under which the Circuit Court of Appeals was acting. That case, together with the decision in American Lithographic Co. v. Werckmeister, impels the conclusion that if under no other statute the Court of Claims has authority under section 1651 to issue subponeas *duces tecum* for the production of documents in possession or control of the Government.

Also pertinent to the issues here is section 2071, Title 28 United States Code, providing:

> "§ 2071. Rule-making power generally
>
> "Each court established pursuant to Act of Congress may from time to time prescribe rules for the conduct of its business. Such rules shall be consistent with Acts of Congress and rules prescribed by the Supreme Court."

The rule-making power therein conferred is as broad as the power of the Supreme Court under the next following section, Title 28 United States Code, section 2072,[18] to promulgate the Federal Rules of Civil Procedure for the district courts, subject only to the additional limitations on the rule-making power of the Court of Claims that its rules "shall be consistent with Acts of Congress and rules prescribed by the Supreme Court." [19] Inasmuch as our subpoena rule, Rule 44, is patterned on the subpoena provisions of the F.R.C.P. Rule

16. See Reviser's Notes to section 1651, supra, note 2.

17. See also Root Refining Co. v. Universal Oil Products Co., 3 Cir., 169 F.2d 514.

18. Section 2072 provides in part: "The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts of the United States * * * in civil actions."

19. The Reviser's Notes to section 2071 indicate the liberal scope of that section: "Recognition by Congress of the *broad rule-making power* of the courts will make it possible for the courts to prescribe *complete and uniform modes of procedure,* and alleviate, at least in part,

45, there is clearly no violation of the requirement that our rules be consistent with rules promulgated by the Supreme Court. There remains the inquiry as to whether our Rule 44 is consistent with the acts of Congress. The only acts of Congress of possible relevance are sections 1651, 2503, and 2507. Sections 1651 and 2503 are obviously not inconsistent, and we believe it is equally apparent that section 2507 offers no inconsistency—on the contrary, it authorizes the very result for which the subpoenas *duces tecum* are sought to be used.

It certainly would appear that if section 2072 (either independently or in conjunction with section 1651) authorizes the Supreme Court to promulgate rules for the use of subpoenas *duces tecum* for the production of documents in possession or control of officers or employees of the Government in the district courts, Bowles v. Ackerman, D.C., 4 F.R.D. 260,[20] section 2071 must be construed to authorize the Court of Claims to promulgate similar rules for its own use. It is significant that in many cases the district courts have concurrent jurisdiction with the Court of Claims. Title 28 United States Code, section 1346. The Government does not contend that it is immune from subpoenas *duces tecum* in such cases in the district courts. We can conceive of no reason why the Government should be immune from subpoenas *duces tecum* in this court, while subject to such process in the district courts.

The overwhelming import of the broad powers stated in sections 1651, 2071, and 2503 demonstrate without question that Congress had no intention to deny to the Court of Claims effectual process, including the writ of subpoena *duces tecum* where appropriate, to maintain its jurisdiction. The argument that section 2507 is exclusive in operation and permits of no use of subpoena *duces tecum* finds no support whatsoever in the statutes, and must be rejected.

Even if section 2507 were the exclusive statute to which the Court of Claims could look for authority to compel the production of government documents, however, we could find nothing to preclude the exercise of the authority therein conferred by use of subpoena *duces tecum*. Except as to the proviso concerning disclosure of matter injurious to the public interest, section 2507 is in no sense a limiting statute. On its face it sets to rest any objection that government documents may not be obtained by process of the court.[21]

Although defendant contends that plaintiff must proceed if at all only by a motion for call under Rule 26(b), a motion for call is by no means the exclusive method by which the authority of section 2507 may be exercised. There is no particular procedure provided by Congress in that section. The motion procedure in Rule 26(b) was not created by Congress, but was developed by the court itself. The authority of section 2507 may be drawn upon not only in modifying the motion procedure of Rule 26(b), but also in providing alternative methods whereby government documents might be obtained, provided only that the qualifications of that section be observed, i. e., that the material sought be deemed necessary,[22] and that its disclosure not be injurious to the public interest.

---

the necessity of searching in two places, namely in the Acts of Congress and in the rules of the courts, for procedural requisites." [Emphasis supplied.]

See also the quotation from former Attorney General Cummings contained in the Reviser's Notes.

20. Cf. Bank Line v. United States, D.C., 76 F.Supp. 801.

21. In U. S. ex rel. Touhy v. Ragen, 340 U. S. 462, 71 S.Ct. 416, 95 L.Ed. 417, a subordinate official of the Department of Justice was held not in contempt where he refused to obey a subpoena *duces tecum* ordering production of papers of the Department in his possession, under a general order of the Attorney General classifying such material as confidential. The Attorney General's order was issued under 5 U.S.C.A. § 22, authorizing him to issue regulations for the use of departmental records, provided such regulations were *not inconsistent with law*.

There is no claim of privilege or assertion here that the documents sought are confidential, and it would appear that the express authority of the Court of Claims under section 2507 precludes any question here such as that raised in U. S. ex rel. Touhy v. Ragen.

22. Cf. the qualification under Rules 26 and 34 of the F.R.C.P. providing for discov-

It was early stated that under the then existing rules of the court a motion for call was "in the nature of a *subpoena duces tecum*." Robinson v. United States, 48 Ct. Cl. 454, 458. The term applied to the process could hardly affect its validity. Thus even if section 2507 were the exclusive authority for obtaining documents from the Government, that section itself clearly would authorize the use of subpoenas *duces tecum*.

We mentioned above the matter of the privilege under section 2507 of the head of the department to refuse to comply when in his opinion compliance would be injurious to the public interest. The defendant has contended that if government documents were subjected to subpoenas *duces tecum*, such privilege would be destroyed.

 The short answer to that argument is that with respect to the particular documents here sought there has been no finding or assertion by the head of the department, as is required by section 2507, or for that matter no suggestion even by counsel for defendant, that disclosure of the documents in question would result in injury to the public interest, although opportunity has been provided if such were the case. But assuming the strongest case for the defendant, i. e., that section 2507 were the exclusive authority under which production of government documents might be ordered, so that there could be no question but that the privilege therein provided would be available, there is no reason why that privilege might not be equally protected upon a subpoena *duces tecum* as upon a motion for call, in similar manner as any other privilege might be asserted in response to a subpoena *duces tecum*.

Thus summarizing at this point with respect to defendant's contention that the Court of Claims has no power to obtain government documents by subpoena *duces*

*tecum,* we find that section 2507 was never intended to be the exclusive authority under which the production of government documents might be required, that such authority exists under sections 1651, 2071, and 2503 independently of section 2507, and that even if section 2507 were exclusive in operation, it nevertheless is sufficiently broad itself to authorize the issuance of subpoenas *duces tecum* to obtain documents in the control of the Government.

As to whether this court in its discretion should permit the use of subpoenas *duces tecum* against the Government in lieu of the motion for call, it suffices to say that the circumstances of the instant case do justify issuance of subpoenas *duces tecum*. No more than 10 days was available to plaintiff before the already twice-postponed hearings were to resume. Procedure by motion for call seldom consumes less than a month, more often several months, and sometimes considerably longer. The long delays, the gravity and complexity of the issues, the substitution of plaintiff's counsel just a brief time prior to the scheduled date of the hearings, the practical difficulties of obtaining the requested documents by motion for call by the time of the hearings, and the further fact that defendant has had opportunity to present available objections to production of the particular documents similar to that which would have been available on motion for call,[23] justify the conclusion that no interest would be served by denying plaintiff use of the writ of subpoena *duces tecum*.

██ *It is not intended by this opinion to encourage the indiscriminate substitution of subpoenas* duces tecum *for motion for call, or such other procedure as might be provided. Procedure by motion is in the usual circumstances the preferable method and should be followed where rea-*

ery and production of documents, etc., that the matter sought must appear "reasonably calculated to lead to the discovery of admissible evidence."

**23.** Cf. the comment of Prof. Moore that the chief difference between Rule 34, F.R. C.P., Motion for Production of Docu-

ments, and Rule 45(b), F.R.C.P., Subpoena *duces tecum*, as between parties, is one as to which party must take the initiative in supporting or protesting the request for production of documents. 4 Moore's Federal Practice, 2d ed., par. 26.10.

sonably adaptable to the requirements of the particular litigation. Consideration of the infinite variety of circumstances that might arise during the course of litigation, however, does not permit the court to foreclose the use of any procedure that might be devised within the limits of its statutory authority. Each case must be considered upon its own facts. It is believed the facts in the instant case warrant the conclusion reached.

 We consider now defendant's contentions that the subpoenas should be quashed on the grounds that some of the documents called for are irrelevant and immaterial to the issues and that with respect to others, the subpoenas are oppressive and unreasonable in that the papers called for are described in broad and sweeping terms and their production would cast an unreasonable burden on the defendant. On a motion to quash a subpoena calling for the production of documents to be used as evidence, it must appear that the documents sought are material, or probably material, to the issues. In the determination of materiality, we resort not only to the argument of counsel on the motions but to the pleadings and the pertinent evidence thus far produced. Moreover, we cannot disregard the principle that in cases involving fraud, a broad scope of investigation must necessarily be allowed.

 While a subpoena *duces tecum* should specify a reasonable period of time and describe with reasonable particularity the subjects to which the documents called for relate, the mere fact that the documents sought cover an extended period of time and are voluminous, does not in itself render the subpoena unreasonable. In Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500, there was a proceeding under the Sherman Anti-Trust Act in which there was issued a subpoena *duces tecum* commanding an association of manufacturers to produce all letters and telegrams, or copies thereof, passing between it and its predecessors, their officers and agents, and the several members of such association, and the officers and agents of such members, during a specified period of five and one-half months, relating to the manufacture and sale of a specified class of goods, and particularly with reference to certain specified meetings and activities and aspects of the trade involved. The Supreme Court held that the subpoena was not unreasonable or oppressive.

In the subpoenas served on the Attorney General, the Secretary of the Army and the Comptroller General, the documents called for are practically identical and are listed separately by number in Appendix A attached to each subpoena. We have concluded the following action should be taken on the severally numbered items in Appendix A of each of the three subpoenas, which are treated together:

 (1) Defendant's motion to quash is granted as to this item in each of the three subpoenas on the basis of the assurance by counsel for defendant that the requested document will be produced (and substituted for the copy now in evidence as Exhibit 14) at the time of the next hearing fixed by the commissioner of this court.

 (2) Defendant's motion to quash is granted as to this item in the three subpoenas, because it is apparent that the document sought or its equivalent is already in evidence.

(3) (a to h inclusive) Defendant's motion to quash is denied.

 (4) Defendant's motion to quash is granted, since it appears that the document requested is available from several sources in published form and may be procured by plaintiff without the use of a subpoena.

 (5) The document listed under this item is the Visitor's Register of the New York Purchasing Office of the Quartermaster for May 19, 1947, showing visitors for the bid opening at 11:00 o'clock a. m. that day. Since there is no showing or contention that this document was ever in the possession of the Attorney General or the Comptroller General, the motion as to that item in each of the subpoenas served on them is granted. Defendant's motion to quash Item 5 of the subpoena served on the Secretary of the Army is denied.

(6) and (7) There is no question that the documents listed in each of these items are described with reasonable particularity and that the period of time involved is a reasonable one. Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, supra. Accordingly, as to Items 6 and 7, defendant's motion to quash the subpoena served on the Secretary of the Army is denied. With respect to the papers described in Items 6 and 7 of the subpoenas served on the Comptroller General and the Attorney General, however, it seems apparent that these documents were never a part of the records of their departments. Defendant's motion to quash that portion of the subpoenas served on them is granted.

(8) Defendant's motion to quash is denied as to Item 8 for each of the three subpoenas.

We believe that the subpoena served on the Administrator of the Reconstruction Finance Corporation fails to meet the requirements stated above. Accordingly, the motion to quash that subpoena is granted.

There is no showing or contention that the Attorney General, the Secretary of the Army, or the Comptroller General have personal knowledge of the facts relating to the documents sought to be obtained from their departments, and no useful purpose would be served in requiring these officials to appear in response to the subpoenas. For that reason, the heads of these departments may file the documents, with respect to which the motion to quash has been denied, with the clerk of this court in the same manner as though the papers were being supplied in a response to a call on such departments, provided that the documents shall be filed with the clerk on or prior to April 1, 1953.

We take judicial notice of the changes in the Executive branch of the Government that have occurred during the pendency of the motions to quash, and of the fact that the former Attorney General and the former Secretary of the Army, upon whom two of the subpoenas were served, are no longer in a position to produce the documents allowed under this order. Accordingly, if such documents are not filed with the clerk within the time stated above, he is directed, upon request of plaintiff's counsel, to issue new subpoenas in conformity with this order, commanding the Attorney General and the Secretary of the Army to appear and produce such documents at the time and place fixed by the commissioner of this court for the next hearing in this case. Since the personal appearance of these officials is not essential in this instance, the clerk is directed to insert in the first paragraph of each subpoena, following a reference to the list of documents, the following statement: "Provided that, in lieu of your appearance, you may designate any officer or employee under your supervision to appear and produce such documents at the time and place stated."

The subpoena served on the Comptroller General may by this order be considered as amended to include the above-quoted proviso.

It is so ordered.

HOWELL, WHITAKER and LITTLETON, JJ., concur.

MADDEN, Judge (dissenting).

I disagree with the decision of the court, not on the ground that the decision would be wrong if this were an appropriate case for decision. I think the question should not be decided at all, in the instant case. It is an important and a difficult question, as is demonstrated by the lengthy opinion of the court.

As the plaintiff puts the problem before the court "* * * the issue in this particular case is quite simple and limited: how can plaintiff get certain documents it needs from the Government?" The answer to the plaintiff's need is found in Section 2507 of the Judicial Code, which is quoted in the opinion of the court, and which provides for calls upon the departments of the Government for information or papers. That section is plain and beyond controversy. The only reason the plaintiff did not use the call procedure was that it thought that it was going to have to complete its introduction of evidence before it would, in the normal course of

444

waiting for the response to the call, have its evidence available. Decision as to postponements of hearings are, of course, within the complete control of the commissioner of the court, and of the court itself, and, when a call is requested without delay, the necessary postponement will be granted.

The statutory provision for calls on the departments says "The head of any department or agency may refuse to comply when, in his opinion, compliance will be injurious to the public interest." This provision seems to be quite incompatible with the idea of a subpoena *duces tecum,* peremptorily requiring the production of papers. Unless the court would accept, for a response to the subpoena, in place of the papers, a statement by the head of the department that, in his opinion, their production would be injurious to the public interest, the call procedure and the subpoena procedure are in irreconcilable conflict. It would be quite unheard of that the process of a court should leave to the one upon whom it is served complete freedom to obey it or to respond that he declined to obey it.

The reconciliation of the apparent incompatibility is too difficult to be undertaken by a court as a work of supererogation. I would leave its resolution to a time and occasion, if one ever occurs, when its resolution is required.